Mimi Blye, Respondent-Appellant, v Manhattan and Bronx Surface Transit Operating Authority, Appellant-Respondent, and City of New York, Respondent.

First Department, February 10, 1987

---

## APPEARANCES OF COUNSEL

*Lawrence Heisler* of counsel *(Anthony J. Bellito* and *John A. Murray* with him on the brief; *William E. Rosa,* attorney), for appellant-respondent.

*Stephen R. Krawitz* of counsel *(Mangiatordi & Corpina,* attorneys), for respondent-appellant.

*Fay Leoussis* of counsel *(Leonard Koerner* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

CARRO, J.

At issue is the scope of the duty of care owed by a bus operator to prospective passengers. While keeping in mind that factors such as the vehicle's proximity to a hazardous condition and the foreseeability and seriousness of any harm such a hazard could produce will be critical in determining whether in any particular case a breach of duty has occurred, we hold that a bus operator's duty of care to a prospective passenger is to provide a reasonably safe passage onto the bus which does not invite or dictate that the passenger board the bus via a treacherous path. Under the particular facts herein, we hold that the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) met this duty of care. Accordingly, we reverse the judgment of liability against it.

The facts of this case can be briefly stated. In the early afternoon of September 8, 1981, plaintiff Mimi Blye was standing against the wall of a store at 801 Madison Avenue, between 67th and 68th Streets, waiting for a bus. The bus stop at this location ran from the corner of 67th Street past the front of 801 Madison Avenue. The sidewalk on this block had a width of approximately 10 feet. Alongside the street curb of

the sidewalk and across from 801 Madison Avenue was a tree well or square measuring 3 feet by 3 feet, which contained indiscriminately placed cobblestones, but no tree.

Ten to 15 minutes after plaintiff's arrival at the bus stop, a bus owned and operated by defendant MABSTOA, traveling north on Madison Avenue, a one-way street, pulled over to the bus stop, with its front end approximately two feet past the northerly border of the tree well and five feet past the southerly border of the well. Rather than walk along the sidewalk directly to the front door of the bus, which path was clear of any obstruction or hazardous condition, plaintiff chose to head directly to the tree well, which was not in the direct path of the bus door, and tripped over the top southeasterly corner cobblestone. The cobblestone was raised two inches above the sidewalk level. Plaintiff sustained multiple injuries for which she now seeks damages. Plaintiff never alerted the bus driver to the accident, nor was she able to identify the particular bus or operator.

■ Suit was commenced against both MABSTOA and the City of New York, and the matter was tried before a jury. Plaintiff was the only witness to testify as to the accident. The jury found that the city had not received the proper notice of the defect, as required under Administrative Code of the City of New York § 394a-1.0 (d), and thus entered a verdict in favor of the city against plaintiff. The jury also found MABSTOA to have been 85% responsible for the accident and plaintiff 15% negligent. The gross damages award of $230,000 was reduced, accordingly, to $195,000. Motions to set aside the verdict and for entry of a directed verdict against the city were denied. While plaintiff and defendant MABSTOA both appeal from the dismissal of the complaint against the city, we conclude that adequate notice was indeed not given and the jury's verdict of no liability in favor of the city is, accordingly, affirmed. Of concern in this case is the finding of liability against MABSTOA.

■ Before liability can be imposed on a defendant for his or her conduct, it must be demonstrated that the defendant owes a duty of care to the plaintiff to conform to a standard of reasonable conduct in relation to the risk involved and that there was a breach of that duty. *(Pulka v Edelman,* 40 NY2d 781, 782, quoting from Prosser, Torts § 53, at 325 [4th ed]; *see also, Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 342; *Waters v New York City Hous. Auth.,* 116 AD2d 384, 386.) Fixing the boundaries of that duty with respect to any particular set of

circumstances is the responsibility of the courts. This involves a very delicate balancing of such considerations as logic, common sense, science, and public policy. *(Bovsun v Sanperi,* 61 NY2d 219, 228; *De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055; *Waters v New York City Hous. Auth., supra; Donohue v Copiague Union Free School Dist.,* 64 AD2d 29, 33.) The concept of foreseeability is a critical factor in defining the boundaries of that duty *(Pulka v Edelman, supra,* at p 785; *Waters v New York City Hous. Auth., supra,* at p 387), but it is never the avenue by which to create a duty which does not otherwise exist. *(Pulka v Edelman, supra.)*

Whether or not in a given case a breach of duty has occurred will depend on the particular facts of the case and is either a question of law or of fact depending on the susceptibility of the facts to varying inferences. *(Sheehan v City of New York,* 40 NY2d 496, 502; *Palsgraf v Long Is. R. R. Co., supra,* at p 345; *Amoruso v New York City Tr. Auth.,* 12 AD2d 11, 12.) The facts at bar, which are not susceptible to varying interpretations, enable us to determine, as a matter of law, whether a breach of duty of care has occurred.

Although we are concerned herein with the duty of care owed a boarding passenger, that duty is so closely related to that owed to a departing passenger as to merit a review of the case law defining the scope of the duty of care of a common carrier to a passenger alighting from a public car. Certainly logic, common sense and public policy would dictate not imposing a greater duty of care on a common carrier towards prospective passengers than is owed to actual passengers.

In this regard, the law is well established that a common carrier's duty of care to an alighting passenger is to stop at a place where the passenger can alight safely and towards that end "to exercise reasonable and commensurate care in view of the dangers to be apprehended." *(Fagan v Atlantic Coast Line R. R. Co.,* 220 NY 301, 306; *Bundy v City of New York,* 18 AD2d 799, *affd* 13 NY2d 1181; *see also, Rodriguez v Manhattan & Bronx Surface Tr. Operating Auth.,* 117 AD2d 541, 542.) Once a safe alighting point is provided, the operator's duty is completed *(supra).* Further, even when the operator of the vehicle is in violation of a traffic regulation, but a passenger makes an independent and voluntary choice of departing from a safe alighting point onto a hazardous road condition, caused by the improper placement of the vehicle, courts will not impose liability on the common carrier.

In *Rodriguez v Manhattan & Bronx Surface Tr. Operating Auth. (supra)* for example, plaintiff Rodriguez was safely discharged from the bus onto a designated bus stop. Even though the bus driver improperly blocked the pedestrian crosswalk with the bus, making it hazardous for anyone to cross the intersection, this court refused to hold MABSTOA liable for the injuries plaintiff sustained upon being hit by a car as she crossed the intersection from behind the bus. This court determined both that plaintiff's injuries were caused by her own voluntary and independent decision to cross the intersection from an unsafe vantage point, and thus, were not proximately caused by the placement of the bus, and that MABSTOA, having safely discharged Rodriguez onto the bus stop had fulfilled its duty to her. *(Accord, Ortola v Bouvier,* 110 AD2d 1077.)

Even when the bus has come to a stop within steps of a hazardous sidewalk condition, as long as the passenger has safely alighted, the duty of care owed that passenger has been fulfilled, and liability will not extend to the passenger's act of stepping into the structurally defective or perilous spot. In *Douglas v New York City Tr. Auth.* (19 AD2d 707), the passenger safely stepped off the bus onto the sidewalk, but was injured when, after taking only a few steps, she tripped over a defect in the sidewalk. The court found that the case had been properly dismissed as against the Transit Authority for failure to make out a prima facie case *(supra,* at p 707). Thus, because a safe passage was provided, it was held, as a matter of law, that there was no breach of duty manifested by the bus driver's placement of the bus near the defective sidewalk. Similarly, in *Goldberg v Interurban St. Ry. Co.* (90 NYS 347), no liability was attached to the bus driver's act of placing the bus near an unguarded excavation into which plaintiff fell after she alighted from the bus and took two or three steps. Plaintiff herself chose her path after safely alighting from the bus.

To be contrasted is *Keener v Tilton* (283 NY 454). There, the Court of Appeals ruled that a question of fact existed as to the negligence of a trolley car driver under facts revealing that in alighting from the trolley car, the plaintiff stepped directly into a hole in the street *(supra,* at pp 455-456). Similarly, in *Schwartz v Brooklyn & Queens Tr. Corp.* (264 App Div 905), it was held that testimony that the bus door opened directly over an icy road raised a question of fact as to the breach of the transit company's duty to provide a reasonably safe point

from which the plaintiff could alight. These and other cases cited in the dissent, in which questions of fact did exist as to the public carrier's breach of duty or jury verdicts of liability were sustained, are distinguishable from the case at bar in that the passengers therein stepped directly onto dangerous conditions or had little choice but to navigate treacherous paths in alighting from the vehicles' doors, which provided the only possible exits.

Plainly, then, the case law obligates the public carrier, in discharging passengers, to provide a reasonably safe point from which the passengers can alight and walk away without incurring a risk of injury. After all, the passenger has no choice but to exit through the bus doors. Beyond that point, however, when it is a passenger's individual choice which directs where he or she will walk, then common sense, logic and public policy simply do not support extending a duty of care to the public carrier to insure that once the passenger has safely departed, the city's streets or sidewalks will be absolutely free from defect. Only when the placement of the bus dictates that the passenger navigate a treacherous path should the public carrier be held liable for any injuries proximately caused by that hazardous condition.

Logically, this also should be the extent of the scope of duty of care with regard to a boarding passenger. It is certainly beyond question that some duty of care to a boarding passenger exists. *(Zuckerman v City of New York,* 66 AD2d 248, *revd on other grounds* 49 NY2d 557.)* It is also obvious that the duty cannot be an absolute one. This court, not long ago, noted that with respect to railroad station entrances and platforms, "[t]he law has never exacted of common carriers an absolute duty to maintain approaches and station platforms in a condition so as to render it impossible for a passenger to slip or become injured. Rather, the standard is to exercise reasonable care under the circumstances." *(Lewis v Metropolitan Transp. Auth.,* 99 AD2d 246, 249, *affd on opn of Kassal, J.,* 64 NY2d 670.)* Being a common carrier, MABSTOA can be held to no greater standard of care.

A reading of the few cases dealing specifically with boarding passengers supports the conclusion that, as with its duty to provide safe exits for alighting passengers, the transit company is under a duty to provide a prospective passenger with a reasonably safe, direct entrance onto the vehicle, clear of any dangerous obstruction or defect which would impede that entrance. Stated differently, imposing liability requires a find-

ing that the placement of the bus dictates that the passenger, in order to board the bus, must negotiate a dangerous or defective path. Thus, in two Second Department cases it was held that questions of fact as to the exercise of due care by the transit company operators were presented when the operators stopped their vehicles near icy street conditions, inviting the prospective passengers to walk on the ice in order to board the vehicles. *(Schwartz v Brooklyn & Queens Tr. Corp., supra,* at p 905; *Young v Jamaica Buses,* 262 App Div 860.)

However, in a case where the passenger, of his own choice, opted to take an indirect and treacherous path onto a vehicle, despite the obvious presence of a clear, direct and safe path from which to board, this court, in *MacKenzie v Union Ry. Co.* (82 App Div 124, *affd* 178 NY 638), has ruled that liability cannot be imposed upon the carrier. Because of the many similarities to the case at bar, the facts of *MacKenzie* bear noting.

On a rainy, dark and foggy night, plaintiff MacKenzie, while on the corner of 176th Street and Third Avenue, signalled for a cable car to stop. The motorman stopped the car past the usual stopping point with its rear platform near a street excavation measuring 15 feet long and 2½ feet wide. The court rejected plaintiff's claim that the rear platform was directly over the excavation, but there was no doubt that the excavation was present, was very close to the car, and that the diagonal path onto the street, which plaintiff chose to travel to board the car, resulted in his stepping into the excavation. This court resolved the question of liability as follows: "The call of the conductor was, doubtless, an invitation to the plaintiff to enter the car, but it was not an invitation to the plaintiff to proceed along the roadway of the street rather than upon the sidewalk. The plaintiff chose his own route along the roadway; he did not choose it either under the direction or guidance of the conductor, and it would be extending the rule of liability far beyond what has been adjudged in any case to which our attention has been called to hold that a street railway company guarantees or insures the safety of a public highway along which an intending passenger chooses to move, in order to reach a car which has overrun its usual stopping place and is waiting for that intending passenger to enter. The general rule of law that a street railway company is bound to ordinary care in furnishing a safe place to passengers to enter upon or alight from its cars is well established; but there is nothing in this proof to show that the car was not

at a safe place, unless we are to be controlled by the unsupported guess of the plaintiff as to the exact point at which the car stopped; and even if he were right in that guess, there is nothing which can charge the conductor of the car with negligence in not warning the plaintiff as he approached the car of the dangerous condition of the trench, for, from the place at which he stood upon the rear platform, there was no appearance of danger. There was a light at the east end of the excavation. It was apparently safe. The conductor had no reason to suppose that the plaintiff did not see the light, or that his vision was obscured by the posts of the elevated railway structure." (MacKenzie v Union Ry. Co., supra, at pp 128-129.)

As in MacKenzie (supra), this plaintiff chose her dangerous path without the guidance or direction of the bus driver, who fulfilled his duty of care by providing a safe place from which to board the bus. The part of the tree well closest to the bus was located approximately two feet from the front of the bus. The part of the tree well containing the cobblestone upon which plaintiff tripped was approximately five feet from the front end of the bus. No obstruction impeded access to the front door of the bus, and nothing in the manner in which the bus was positioned or in the bus driver's actions dictated that anyone board the bus by walking diagonally through the tree well rather than along the obviously safer, more sensible and more direct route provided by the sidewalk. That the bus stopped three feet from the curb, in violation of the traffic regulations, is of no moment, since that did not in any way direct, compel or even invite plaintiff to cross the tree well. That the bus operator could possibly have stopped further ahead at the bus stop, and thus, further away from the tree well, is similarly irrelevant, considering that plaintiff would still have been waiting for the bus at the same location and could still have chosen to walk across the tree well rather than on the sidewalk.

It is noteworthy also that the time of day was early afternoon, providing sufficient daylight for plaintiff to see the tree well and make the deliberate choice of walking through it. Plaintiff had been waiting for the bus for at least 10 minutes and, therefore, had the time to survey the area and did not have to rush to board the bus. Furthermore, there is nothing in the record to even suggest that the bus driver, from his seat on the bus, could have seen the raised cobblestone, nor is it the transit company's obligation to inspect tree wells for such

defects. The bus driver simply did nothing to compel or even suggest that plaintiff walk across this tree well.

As we stated in *MacKenzie (supra)*, it would be extending the rules of liability beyond reasonable limits to require a common carrier to do more than provide a safe, direct place from which to board and instead, to guarantee the safeness of whatever indirect, unnecessary and unreasonable route a prospective passenger voluntarily chooses to travel *(supra,* at p 128).* As was quoted above, the law has never required that entrances and approaches to public vehicles be in such a condition "as to render it impossible for a passenger to slip or become injured." *(Lewis v Metropolitan Transp. Auth.,* 99 AD2d at p 249.)* We conclude, therefore, that as a matter of law, the duty to provide plaintiff a reasonably safe place from which to board the bus was met under these facts, and the verdict of liability against MABSTOA must be reversed.

Accordingly, the judgment of the Supreme Court, New York County (Beatrice Shainswit, J.), entered July 9, 1985, which after a jury trial dismissed the complaint against defendant-respondent City of New York and found defendant-appellant-cross-respondent MABSTOA 85% liable for plaintiff's injuries, should be modified, on the law, to the extent of vacating the jury's verdict of liability against MABSTOA, and the judgment otherwise affirmed, without costs.

ELLERIN, J. (dissenting). While we are all in agreement that defendant Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) was under a duty to provide the prospective passenger, Ms. Blye, with a reasonably safe place from which to board the bus, I cannot acquiesce in the majority's finding that the defendant here cannot be found negligent because it properly fulfilled that duty as a matter of law. On the contrary, based on the record before us, that issue is a question of fact which the trial court properly submitted to the jury, together with the issues of proximate cause and contributory negligence, and there is ample support for the jury's verdict in favor of the plaintiff. Accordingly, I would affirm.

As the Court of Appeals stated in *Sadowski v Long Is. R. R. Co.* (292 NY 448, 455): "Essentially, what is negligence in a given case is a question of fact. Each case depends upon its own peculiar circumstances * * * Negligence arises from breach of duty and is relative to time, place and circumstance *(Mink* v. *Keim,* 291 N. Y. 300, 304). Ordinary care must be in

proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect".

More recently, in *Havas v Victory Paper Stock Co.* (49 NY2d 381), that court addressed the roles of Judge and jury in a negligence suit and concluded that determination of the question of whether or not a party has breached a particular duty of care imposed upon it is one which is uniquely appropriate for determination by a jury rather than the court even where, as in that case, the facts are "essentially undisputed". In terms particularly relevant to the case here in issue, the court stated (at p 388): "This brings us to the question as to whether defendant breached this duty by negligence on its part. It was particularly appropriate to leave this issue to the jury, not only because of the idiosyncratic nature of most tort cases (Pound, Introduction to the Philosophy of Law [rev ed, 1954], p 71), or because there was room for a difference in view as to whether Victory's conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because, in the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process (see Fleming, Torts [3d ed, 1965], p 271; Weiner, Civil Jury Trial and the Law-Fact Distinction, 54 Cal L Rev 1867, 1887-1891, 1938)."

Submission of the breach of duty issue to the jury was particularly appropriate in the instant case. Here, the bus in question pulled to a stop some three feet away from the curb, with the front of the bus, at best, two feet in front of a tree well with raised cobblestones and there was testimony that approaching the entrance of the bus by the most direct route took plaintiff through the tree well that was located in such close proximity to the entry door. There was also testimony that the length of the bus stop was such that the bus could have been brought to a stop with its doors well away from the tree well. The majority takes the position that in stopping the bus, as it did, the defendant fully met its duty of providing the prospective passenger with a safe place to board the bus, as a matter of law, because it did not "dictate that the passenger board the bus via a treacherous path". That, however, is not the test. It is foreseeability of harm which is the touchstone and admeasurement of both the existence of a duty in the first instance, and whether such duty has been fulfilled.

While the majority opinion alludes to "[t]he concept of foreseeability [as] a critical factor in defining the boundaries

of [the] duty" upon defendant, it wholly ignores that concept by determining, as a matter of law, that because it was possible to approach the bus without stepping into the tree well, the defendant completely fulfilled its obligation to provide plaintiff, as a prospective passenger, with a safe place to board the bus. It reaches this conclusion without in any way considering the critical issue of what risks or hazards were reasonably foreseeable by virtue of bringing the bus to a stop in the manner here done. As Judge Fuchsberg observed in *Havas v Victory Paper Stock Co.* (49 NY2d, at pp 385-386), "[I]n a case which raises such traditional negligence law queries as does the one before us the answers are still to be found in the principle so pungently phrased by CARDOZO that '[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation' *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344)."

In considering the risks to be perceived here, can it really be gainsaid, as a matter of law, that in light of the known propensities of urban passengers it was reasonably foreseeable that stopping a bus away from the curb and in close proximity to a tree well, with protruding stones and in a direct path to the bus entrance door, would give rise to the potential danger of a prospective passenger tripping over such obstruction in the course of approaching the bus for purposes of boarding. I submit that common sense and common experience, the hallmarks of our jury system, indicate to the contrary and that under the circumstances here present it could properly be found that such a risk could, and should have, been apprehended by a bus operator charged with the duty of providing prospective passengers with a reasonably safe place to board. At the very least, the facts here can be said to be subject to varying inferences which were properly the province of a jury determination.

"Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315; *Heffler v State of New York,* 96 AD2d 926).

That plaintiff herself could have chosen another, safer path is, of course, of great significance on the issue of contributory negligence but it would not, as the majority appears to indicate, have a conclusive impact on the issue of defendant's negligence. The dispositive issue on the latter is whether or not defendant should have reasonably foreseen that stopping

the bus as it did would give rise to the danger that prospective passengers might be exposed to harm by virtue of the proximity of the entrance door of the bus to the tree well's protruding stone, notwithstanding the availability of a safer means of approaching the bus.

This distinction is demonstrated very clearly in the case of *Schwartz v Brooklyn & Queens Tr. Corp.* (264 App Div 905) which has many parallels to the case before us. The plaintiff in that case, as she was preparing to board the defendant's trolley car, fell upon some ice that extended from the car tracks to the curb. There were other places along the track nearby which were free of ice. The trial court dismissed the complaint at the close of plaintiff's case "on the ground that the cause of action alleged in the complaint was not proved and that plaintiff was guilty of contributory negligence as a matter of law". The Appellate Division reversed, finding that the mere fact that plaintiff knew of the existence of the ice was not sufficient to charge her with contributory negligence as a matter of law and, further, that the issue of defendant's negligence vis-à-vis its duty "to furnish plaintiff with a reasonably safe place from which to board the trolley car" was a question of fact.

Among the cases relied upon by the majority in *Schwartz (supra)* is *Keener v Tilton* (283 NY 454), also similar in many respects to this case. There, a passenger was injured at night after alighting from a trolley car when she stepped into a depression caused by one brick in the pavement being an inch and a half to two inches below the surface of the other bricks. Notwithstanding that such hole or depression "was outside the defendant's right of way" *(supra,* p 455), the Court of Appeals reversed the Appellate Division's rejection of a jury verdict in favor of plaintiff and held that the question of whether the carrier's conduct constituted negligence was a jury question, noting in its opinion that "[t]he essential duty of a carrier may call upon it to safeguard a passenger against inconspicuous dangers of the road that should be known to it" *(supra,* at p 456).

Similarly, in *Young v Jamaica Buses* (262 App Div 860), where the trial court had dismissed the complaint of a prospective passenger who was injured when she fell on ice in the street while attempting to reach and board defendant's bus which had stopped and opened its door 10 feet from the curb, the Appellate Division reversed and held that "a question of

fact as to the exercise of due care upon the part of the operator of the bus was presented."

Other cases which have held the issue to be a question of fact include the following: *Barcellos v Triboro Coach Corp.* (11 NY2d 702, *affg* 11 AD2d 1045 [upholding a jury verdict finding defendant bus company liable for injuries to plaintiff suffered when after alighting from a bus which was stopped at an angle with its back end four feet from the sidewalk she caught her foot in a hole in the street]); *Hall v Triboro Coach Corp.* (274 App Div 808, 809 ["(a) question of fact as to the negligence of the defendant bus company was presented by the testimony of plaintiff wife to the effect that the bus stopped in such a position that the exit door was near a deep hole in the roadway"]); *Welch v Triple Cities Traction Corp.* (265 App Div 984, 985 [evidence that plaintiff upon alighting from defendant's bus fell upon ice and snow, was held sufficient "to sustain the finding of the jury that defendant was negligent in failing to provide a reasonably safe place for plaintiff to alight from the bus"]); *Engel v Brooklyn & Queens Tr. Corp.* (252 App Div 792 [evidence that passenger after exiting from a trolley stepped into a depression located some 24 to 25 inches from the defendant's outside rail was held to present a question of fact for the jury as to defendant's alleged negligence in failing to furnish to the plaintiff a reasonably safe place to alight and was ample to support a verdict in favor of plaintiff]); *Cordes v Surface Transp. Corp.* (40 NYS2d 878 [evidence that passenger exited from side door of bus, which was some distance from the sidewalk curb, with an intervening pile of snow between the exit steps and the sidewalk curb, and that she slipped on ice and snow as she put her foot on the curb was held to present an issue of fact for the jury as to whether defendant was negligent in the performance of its duty to furnish her with a reasonably safe place at which to disembark]).

In distinction, the case of *Rodriguez v Manhattan & Bronx Surface Tr. Operating Auth.* (117 AD2d 541) so heavily relied upon by the majority deals with a different issue. There, the passenger was already safely discharged from the bus and onto a designated bus stop so that the obligation to provide the passenger with a safe place to alight had already been completed and the passenger-carrier relationship and the duty arising therefrom had been terminated by the time plaintiff chose to cross the roadway. The instant case, on the other hand, directly relates to the carrier's duty to provide plaintiff with a safe place to board the bus and the physical circum-

stances involved are directly and proximately related to the prospective passenger's attempt to board the bus. Whether or not the manner in which the bus was stopped constituted a failure of defendant to fulfill its duty in light of "dangers to be apprehended" is the kind of qualitative factual judgment that should properly be made by a jury.

It has long been accepted that in all but the most extraordinary or egregious instances, the issue of whether a defendant has conformed to the standard of conduct required by law is a question of fact. *(Andre v Pomeroy,* 35 NY2d 361, dissenting opn of Breitel, Ch. J., at pp 365-367, and authorities therein cited.) The instant case is clearly not of such extraordinary instance but falls squarely within the ambit of the cases previously discussed and involve an evaluation of the kind of every day conduct and experiences which jurors are particularly well equipped to judge.

Accordingly, I dissent and would affirm the judgment entered on the jury's verdict in favor of the plaintiff.

SANDLER, J. P., and KASSAL, J., concur with CARRO, J.; FEIN and ELLERIN, JJ., dissent in an opinion by ELLERIN, J.

Judgment, Supreme Court, New York County, entered on July 9, 1985, modified, on the law, to the extent of vacating the jury's verdict of liability against MABSTOA, and the judgment is otherwise affirmed, without costs and without disbursements.