■ JAMES J. KELLEHER IV, Respondent-Appellant, v F.M.E. AUTO LEASING CORP., Appellant-Respondent, et al., Defendant, and BLACK OAK SALOON, Respondent. [596 NYS2d 136] —In a negligence action to recover damages for personal injuries and wrongful death, the defendant F.M.E. Auto Leasing Corp. appeals, as limited by its brief, from (1) so much of a judgment of the Supreme Court, Suffolk County (Copertino, J.), entered July 20, 1990, as amended, as, upon a jury verdict, and upon an order of the same court, entered August 15, 1990, which set aside the punitive damages award of $750,000, is in favor of the plaintiff and against it in the principal sum of $365,000, and (2) so much of an order of the same court, entered August 15, 1990, as denied, in part, the appellant's motion to set aside the jury's verdict as contrary to the weight of the evidence, and the plaintiff cross-appeals from so much of the order of August 15, 1990, as granted that branch of the motion which was to set aside the punitive damages award of $750,000 and directed that the judgment be amended accordingly.

Ordered that the judgment, as amended, is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order is affirmed, without costs or disbursements.

The instant appeal stems from the tragic death of George Beatty on a cold and snow-covered Suffolk County street. The evidence adduced at trial established that at approximately 11:00 P.M. on February 3, 1985, after dinner at a local restaurant, 72-year-old George Beatty entered the premises of the

Black Oak Saloon in Huntington. Beatty ordered and drank one glass of cognac. A short while later he ordered a second glass of cognac. Beatty, who previously exhibited no signs of intoxication, did not consume the second drink. Rather, upon observation of saloon employees that Beatty now appeared to be drunk, and upon Beatty's statement that he did not feel well and wanted to go home, a saloon waitress called for a cab to take Beatty home. Beatty informed the bartender of his address.

A short while later a cab arrived at the saloon. The cab was one owned by the defendant F.M.E. Auto Leasing Corp., doing business as Orange and White Taxi Co. (hereinafter FME) and driven by the defendant Michael Dzingelis. Beatty was assisted out of the saloon into the cab. The bartender informed Dzingelis of Beatty's address and the cab driver was given a $5 tip to ensure that Beatty reached his home safely. Beatty was conscious but said nothing as he entered the cab.

Beatty never reached his home. According to detectives who interviewed Michael Dzingelis, Dzingelis could not find Beatty's home. He asked Beatty for further directions but Beatty was uncooperative. Dzingelis continued driving around for 10 to 15 minutes, but could not locate Beatty's address. Meanwhile, Dzingelis's dispatcher notified him that his next fare was waiting. Dzingelis reported back that he was "having a problem" with Beatty and the dispatcher directed Dzingelis to "get rid of [Beatty] and get on to the next fare". Dzingelis arbitrarily pulled into the driveway of a nearby house, choosing it only because its circular driveway reduced the chances that the cab might get stuck in the snow. Dzingelis then physically pulled Beatty, by his ankles, out of the cab; then, by grabbing Beatty under his arms, he dragged Beatty out of the way, and dropped him on the snow-covered ground. Dzingelis removed Beatty's possessions from the cab, took the fare money out of Beatty's hand, and left Beatty lying in the snow as he drove off to his next fare. As Dzingelis drove off, he observed Beatty "floundering around like he was trying to get up". Several hours later, Beatty was found dead in the snow, less than one-quarter of a mile away from his home. He died from hypothermia due to exposure to environmental cold, contributed to by intoxication. The alcohol level in Beatty's brain was approximately .28 percent. He bore recent injuries and there was blood in the snow around his body, indicating that he had been "clawing" around in the snow, trying to get to his feet.

The jury returned a verdict in favor of the plaintiff, the

executor of George Beatty's estate, in the principal sum of $1,365,000. The verdict was broken down as awarding $115,000 for wrongful death, $250,000 for conscious pain and suffering, $250,000 in punitive damages for Michael Dzingelis's wanton and reckless acts and $750,000 in punitive damages against FME upon the finding that FME had authorized Dzingelis's acts. A judgment of $1,115,000 was entered against FME. FME appeals from this judgment. Subsequently, FME moved to set the judgment as contrary to the weight of the evidence. The court granted this motion to the extent of vacating the $750,000 award of punitive damages against FME and directed the clerk to amend the judgment accordingly. FME appeals from so much of the order as denied, in part, its motion to set aside the verdict, and the plaintiff cross-appeals from so much of the order as vacated the award of punitive damages against FME. We now affirm in all respects.

There is no merit to FME's contention that the court committed reversible error by admitting the statement Dzingelis made to detectives investigating George Beatty's death. Apparently after being acquitted on criminal charges, Dzingelis fled the State and his whereabouts at the time of this trial were unknown. Dzingelis's statement constituted the most damaging evidence against FME. The court correctly held that Dzingelis's statement, to the extent that it constituted an admission, was inadmissible against FME because Dzingelis lacked the authority to speak on behalf of his employer (see, Loschiavo v Port Auth., 58 NY2d 1040). Nevertheless, Dzingelis's admissions to police also constituted statements against his interest. A declaration against interest may be used in evidence by or against anyone (see, Basile v Huntington Utils. Fuel Corp., 60 AD2d 616; Richardson, Evidence § 211 [Prince 10th ed]). It may be admissible against a party other than the declarant where that party's vicarious liability is derived from the acts of the declarant (Basile v Huntington Utils. Fuel Corp., supra; Jamison v Walker, 48 AD2d 320). In this case, the plaintiff established that Dzingelis was unavailable at the time of trial, that the declaration when made was against Dinzgelis' penal interest, that Dzingelis had competent knowledge of the facts, and that he had no possible motive to misrepresent the facts (see, People v Thomas, 68 NY2d 194, cert denied 480 US 948; People v Settles, 46 NY2d 154). Accordingly, Dzingelis's statement was properly received to establish his own negligence, and the vicarious liability of his employer. Moreover, it should be noted that FME's present claims that Dzingelis's unavailability was not adequately es-

tablished are unpreserved for appellate review, as no such arguments were raised before the trial court. Indeed, the defense argued that Dzingelis was an independent contractor whose statements would not give rise to vicarious liability by FME. In any event, there is ample support in the record to conclude that Dzingelis was unavailable which, coupled with the other requisite factors, rendered his hearsay statements admissible.

Equally unavailing is FME's contention that the court erred by denying its request for a jury charge on the issue of the decedent's comparative negligence. Certainly, intoxication may be a basis for a jury instruction on the issue of a plaintiff's comparative negligence in an appropriate case (see, PJI 2:45). However, no such charge was warranted in this case. "A common carrier owes a duty to an alighting passenger to stop at a place where the passenger may safely disembark and leave the area" (Miller v Fernan, 73 NY2d 844, 846; see also, Blye v Manhattan & Bronx Surface Tr. Operating Auth., 124 AD2d 106, affd 72 NY2d 888). The evidence clearly established the decedent's intoxication at the time he was pulled from the cab, and as such, the defendant common carrier "was under [a] special duty, with regard to the [decedent] by reason of his insensible condition * * * of exercising such care, precaution and aid as were reasonably necessary for his safety, and of bestowing upon him any special care and attention beyond that given to the ordinary passenger" (Fagan v Atlantic Coast Line R. R. Co., 220 NY 301, 307). The decedent's intoxication was not negligence which contributed to the happening of the accident. Although he may have been negligent in becoming intoxicated, the defendant common carrier was obligated to care for him as he was. "His intoxication previous to and at the time the defendant unlawfully placed him, as its passenger, in the hazardous situation is not a direct and proximate cause of the injury" (Fagan v Atlantic Coast Line R. R. Co., supra, at 312; Fardette v New York & Stamford Ry. Co., 190 App Div 543). The duty rested upon FME to care for its intoxicated passenger in a prudent manner, not to leave him in a worse position than when it took charge of him. Dzingelis's wanton negligent conduct proximately caused the decedent's demise, not his intoxication (see, Parvi v City of Kingston, 41 NY2d 553; cf., Ellison v New York City Tr. Auth., 63 NY2d 1029). Thus, no jury charge on the decedent's comparative negligence was warranted.

The court correctly set aside that portion of the jury's verdict as awarded the plaintiff $750,000 in punitive damages

against FME. Where an employer's liability is vicariously derived from the acts of its employee, the employer cannot be held liable for punitive damages absent complicity in the wrongdoing. In this case, the plaintiff did not establish that FME knowingly ordered, participated in, or ratified the conduct of its employee (see, Loughry v Lincoln First Bank, 67 NY2d 369; 36 NY Jur 2d, Damages, § 181). Accordingly, FME was not liable for punitive damages.

We have reviewed the defendant's remaining contentions and find them to be without merit. Sullivan, J. P., Miller, Lawrence and O'Brien, JJ., concur.