*1015 OPINION OF THE COURT
Paul G. Feinman, J.
The motion and cross motion are consolidated for purposes of decision.
Defendant Volunteers of America-Greater New York, Inc. (VOA-NYC) moves for summary judgment and dismissal of the complaint and all cross claims as against it pursuant to CPLR 3212. Defendant City of New York cross-moves similarly for summary judgment and dismissal of the complaint and all cross claims as against it pursuant to CPLR 3212. For the reasons which follow, the motion and the cross motion are denied in their entirety.
Defendant VOA-NYC is a nonprofit charitable and religious affiliate of Volunteers of America, Inc. It provides a variety of direct services to those in need, including housing, child care programs, and services for the developmentally disabled (notice of motion, exhibit F, Lewin affidavit 1i 2). Plaintiff is a resident at the Tier II Programs, Housing Division Regents Family Residence, in a facility located at 2720 Broadway allegedly owned by the City, and controlled, managed, and maintained by the City and VOA-NYC.
Plaintiff was injured on November 29, 2003 when she fell from a bunk bed that lacked a railing or other protective device (notice of motion, exhibit A, verified complaint; exhibit D, verified bill of particulars). She alleges that she had been asleep and awoke between 1:00 and 1:30 a.m. because she needed to use the bathroom and fell from the bed because there was no bed rail to protect her (notice of motion, exhibit C, General Municipal Law § 50-h hearing transcript [50-h hearing] at 5, 7). Prior to the night in question, she had slept on the lower bed and her son had sometimes slept on the upper bed, but on November 29, 2003, her asthma induced her to try to sleep on the upper bunk because she believed there was more air (50-h hearing at 8-9). She alleges that the defendants failed to install or provide any protective devices for the bunk bed despite being put on verbal and written notice of their necessity (notice of motion, exhibit D, bill of particulars 1i 3). Written notice included a maintenance request made by plaintiff nearly two weeks prior to the accident, on November 18, 2003, for both a guardrail and a ladder for the beds, which was given to “security” who was then supposed to turn it over to the maintenance department (plaintiffs affidavit in opposition, exhibit D; notice of motion, exhibit C, 50-h hearing at 10).
*1016 VOA-NYC and the City move and cross-move respectively for summary judgment and dismissal of the complaint on the ground that a bunk bed without a guardrail is not a dangerous condition and that there was no duty to supply a bunk bed with a guardrail.
Legal Analysis
A motion for summary judgment is a drastic measure and to be used sparingly (Wanger v Zeh, 45 Misc 2d 93 [Sup Ct, Albany County 1965], affd 26 AD2d 729 [3d Dept 1966]). Summary judgment is proper when there are no issues of triable fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Issue finding rather than issue determination is its function (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). The evidence will be construed in the light most favorable to the one moved against (Weiss v Garfield, 21 AD2d 156 [3d Dept 1964]). “Where the court entertains any doubt as to whether a triable issue of fact exists, summary judgment should be denied.” (Daliendo v Johnson, 147 AD2d 312, 317 [2d Dept 1989].) To prevail on a summary judgment motion, the moving party must produce evidentiary proof in admissible form sufficient to warrant the direction of summary judgment in his or her favor (GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 967 [1985]). Once this burden is met, the burden shifts to the opposing party to submit proof in admissible form sufficient to create a question of fact requiring a trial (Kosson v “Algaze,” 84 NY2d 1019 [1995]).
To establish a prima facie case of negligence, plaintiff must demonstrate (1) that the defendants owed her a duty of reasonable care, (2) there was a breach of that duty, and (3) she suffered a resulting injury proximately caused by the breach (see, Boltax v Joy Day Camp, 67 NY2d 617 [1986]). The threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party (Espinal v Melville Snow Contrs., 98 NY2d 136, 138 [2002]). It is the court’s responsibility to determine whether there is a duty, and “involves a very delicate balancing of such considerations as logic, common sense, science, and public policy” (Blye v Manhattan & Bronx Surface Tr. Operating Auth., 124 AD2d 106, 109 [1st Dept 1987], affd 72 NY2d 888 [1988], citing Bovsun v Sanperi, 61 NY2d 219, 228 [1984]; DeAngelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055 [1983]). The scope of any such duty of care varies with the foreseeability of the possible harm (Tagle v Jakob, 97 NY2d 165, *1017 168 [2001]). Although foreseeability has been called “a critical factor” in defining an alleged tortfeasor’s duty, it will not create a duty which does not otherwise exist (Blye v Manhattan & Bronx Surface Tr. Operating Auth., 124 AD2d at 109, citing Pulka v Edelman, 40 NY2d 781, 785-786 [1976]).
VOA-NYC argues, and the City adopts the argument, that a bunk bed without a guardrail or other protective device is not a dangerous instrumentality, and that the issue of notice is simply not relevant. VOA-NYC points to Rubin v Olympic Resort (24 Misc 2d 131, 131 [Sup Ct, Nassau County 1960]), where the court stated that it was “not prepared to state that a bunk bed without a guardrail is a dangerous instrumentality in and of itself.” In Rubin, a six-year-old child, left alone in the room with her younger brother, was injured when she fell from the top bunk bed that lacked a protective railing. After a nonjury trial, the complaint was dismissed based on the plaintiffs failure to prove that there was no guardrail or that one could not have been requested, or that the child actually fell from the bed. The court opined that while a bed without a guardrail could be very dangerous to a baby, it might be entirely safe for an older child, and that it was improper for a hotel keeper to be held to a standard of care greater than that expected of the parents who occupied the same room and were aware of the bed’s condition and could determine what equipment was suitable for their children (24 Misc 2d at 131-132).
Plaintiff argues that the beds were designed to have ladders and rails, that most of the beds in the facility have rails and ladders, and that defendants should have repaired her bed when she requested it (plaintiffs affidavit in opposition 1! 6, exhibit C). She argues that because discovery has not been completed, she is unable to show that the beds were intended by the manufacturer to be used with a ladder and rail and that her bed’s safety equipment had been broken or misplaced.
Negligence cases, by their nature, do not normally lend themselves to summary dismissal since the question of negligence, even if the parties agree as to the underlying facts, is a question for jury determination (Villoch v Lindgren, 269 AD2d 271, 273 [1st Dept 2000], citing McCummings v New York City Tr. Auth., 81 NY2d 923, 926 [1993]). Defendants place too much reliance on Rubin which, after all, is almost a half-century old and merely stated that the trial court was not prepared to find that a bunk bed without a guardrail was a dangerous instrumentality. More recently, in Butler v Rafferty (100 NY2d 265 [2003]), *1018 involving a teenager injured when she fell from a bunk bed without a guardrail, the Court of Appeals upheld the dismissal of the complaint based not on a finding that the bunk bed was not dangerous, but rather on the facts that the defendant, a cotenant of the property, had neither control over the quarters where the bed was, nor notice that the bed lacked a railing.
In the case at bar, where plaintiff was a resident in defendants’ building, sought to have a guardrail and ladder provided by defendants for the bunk beds, and lacked any sort of exclusive control over her living quarters, it is inappropriate at this juncture to grant either defendant summary judgment. Rubin is from a court of coordinate jurisdiction and not binding authority. Furthermore, it is beyond cavil that the standards of safety required either of bunk bed manufacturers or of innkeepers or other housing providers who might use bunk beds have evolved since John F. Kennedy was elected President of the United States and Rubin was decided. To the extent that Rubin can be read to hold that a bunk bed without a guardrail is never a dangerous instrumentality, this court declines to follow it as outdated and inconsistent with a modern “very delicate balancing of such considerations as logic, common sense, science, and public policy” (JBlye at 109). Whether the bunk bed at. issue was dangerous or defective, whether the defendants had notice of its dangerous or defective condition, and whether this condition was a proximate cause of injury to the plaintiff are all questions of material fact to be decided at the trial of this action. Accordingly, summary judgment is denied to both defendants.
It is ordered that the motion for summary judgment is denied in its entirety; and it is further ordered that the cross motion for summary judgment is denied in its entirety.