Hervey v Northern Westchester Hosp. (2025 NY Slip Op 03180)

Hervey v Northern Westchester Hosp.

2025 NY Slip Op 03180

Decided on May 28, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 28, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
PAUL WOOTEN
JANICE A. TAYLOR
JAMES P. MCCORMACK, JJ.

2020-09761
 (Index No. 62470/14)

[*1]Marie Hervey, etc., appellant, 
v
Northern Westchester Hospital, respondent.

McCallion & Associates LLP, New York, NY (Kenneth F. McCallion of counsel), for appellant.
Martin Clearwater & Bell LLP, White Plains, NY (Barbara D. Goldberg, Sean F.X. Dugan, and Michael F. Bastone of counsel), for respondent.

DECISION & ORDER
In an action to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Westchester County (Terry Jane Ruderman, J.), entered November 6, 2020. The judgment, upon a jury verdict in favor of the defendant on the issue of liability, and upon an order of the same court dated June 29, 2020, denying the plaintiff's motion pursuant to CPLR 4404(a) to set aside the jury verdict in the interest of justice or as contrary to the weight of the evidence and for a new trial, is in favor of the defendant and against the plaintiff dismissing the complaint.
ORDERED that the judgment is affirmed, with costs.
On February 17, 2012, the plaintiff's decedent was discharged from the defendant, Northern Westchester Hospital (hereinafter NWH), where he had been treated for suicidal ideation. In February 2013, the decedent died from injuries he sustained following a suicide attempt on September 6, 2012. On August 11, 2014, the plaintiff commenced this action to recover damages for medical malpractice against NWH, among others, alleging, inter alia, that the attending psychiatrists who treated the decedent during his various visits and admissions to NWH, starting on December 8, 2008, misdiagnosed the decedent's condition and improperly medicated him with psychotropic and antipsychotic medications. NWH asserted the affirmative defense of the statute of limitations (see CPLR 214-a) and, at trial, the plaintiff took the position that the separate hospitalizations amounted to one long continuous course of treatment, which was not interrupted by the care the decedent received elsewhere. The jury returned a verdict in favor of NWH, finding no continuous course of treatment and that NWH did not depart from good and accepted medical practice in its treatment of the decedent during his final hospitalization. Thereafter, the plaintiff moved pursuant to CPLR 4404(a) to set aside the jury verdict in the interest of justice or as contrary to the weight of the evidence and for a new trial. In an order dated June 29, 2020, the Supreme Court denied the motion. On November 6, 2020, the court entered a judgment in favor of NWH and against the plaintiff dismissing the complaint.
On appeal, the plaintiff contends that the jury verdict should be set aside and a new trial ordered in the interest of justice as the Supreme Court made erroneous evidentiary rulings. The [*2]plaintiff also contends that the verdict was contrary to the weight of the evidence.
"A motion pursuant to CPLR 4404(a) to set aside a verdict and for a new trial in the interest of justice encompasses errors in the trial court's rulings on the admissibility of evidence, mistakes in the charge, misconduct, newly discovered evidence, and surprise" (Bhim v Platz, 207 AD3d 511, 513 [internal quotation marks omitted]; see Schuster v Sourour, 207 AD3d 491, 494). In considering such a motion, a trial judge must decide "whether substantial justice has been done" and "whether it is likely that the verdict has been affected," and must rely on his or her own "common sense, experience and sense of fairness" (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376, 381 [internal quotation marks omitted]; see Bhim v Platz, 207 AD3d at 513; Schuster v Sourour, 207 AD3d at 494). "[T]rial courts are accorded wide discretion in making evidentiary rulings and those rulings should not be disturbed on appeal absent an improvident exercise of discretion" (Molina v Goldberg, 231 AD3d 46, 51 [internal quotation marks omitted]; see Walsh v Akhund, 198 AD3d 1010, 1012).
Contrary to the plaintiff's contention, the Supreme Court properly excluded the proposed hearsay testimony as to statements allegedly made to the plaintiff by Martin Evers, one of the attending psychiatrists at NWH (see Nordhauser v New York City Health & Hosp. Corp., 176 AD2d 787; Alvarez v First Natl. Supermarkets, Inc., 11 AD3d 572; see also People v Soto, 26 NY3d 455, 460-461; Kelleher v F.M.E. Auto Leasing Corp., 192 AD2d 581, 583). Also, statements allegedly made by the decedent to the plaintiff were barred by CPLR 4519 (see Holcomb v Holcomb, 95 NY 316, 326). Further, "where the Dead Man's Statute renders a witness's testimony inadmissible, 'the fact that the testimony would fall within an exception to the hearsay rule is simply irrelevant'" (Grechko v Maimonides Med. Ctr., 188 AD3d 832, 836, quoting Wall St. Assoc. v Brodsky, 295 AD2d 262, 263).
The Supreme Court properly allowed into evidence the deposition testimony of a nurse practitioner, who was a California resident (see CPLR 3117[a][3][ii]; Wells Fargo Bank, N.A. v Cherot, 197 AD3d 773, 776; Jones v Sherpa, 5 AD3d 634, 634). The court providently exercised its discretion in refusing to allow the use of demonstrative evidence during examination of the plaintiff's expert and on summation where the proffered material had the potential to mislead and confuse the jury and prejudice NWH (see People v Jin Cheng Lin, 105 AD3d 761, 762, affd 26 NY3d 701; Raney v Suffolk Obstetrical & Gynecological Assoc., 200 AD2d 612, 612). Although it was error to preclude the use of a photograph depicting the decedent shortly after the suicide attempt as to aid the jury in its assessment of the decedent's pain and suffering (see Axelrod v Rosenbaum, 205 AD2d 722, 722-723), the error was harmless. The jury found that NWH did not depart from good and accepted medical practice and, therefore, never considered the issue of damages (see Cohen v Kasofsky, 55 AD3d 859, 861).
"The standard to be applied on a challenge to a jury verdict in favor of a defendant [as contrary to the weight of the evidence] is whether the evidence so preponderates in the plaintiff's favor that the verdict could not have been reached upon any fair interpretation of the evidence" (Roseingrave v Massapequa Gen. Hosp., 298 AD2d 377, 379-380; see Lolik v Big V Supermarkets, 86 NY2d 744, 746; Stewart v New York Hosp. Queens, 214 AD3d 919, 920-922). "Whether a jury verdict should be set aside as contrary to the weight of the evidence does not involve a question of law, but rather requires a discretionary balancing of many factors" (Nicastro v Park, 113 AD2d 129, 133; see Cohen v Hallmark Cards, 45 NY2d 493, 499; Russo v Mignola, 142 AD3d 1064, 1065-1066). The resolution of credibility issues by the jury, which had the opportunity to observe the witnesses, is entitled to deference (see Grullon v Thoracic Surgical, P.C., 208 AD3d 1163, 1164). "Further, where conflicting expert testimony is presented, the jury is entitled to accept one expert's opinion and reject that of another expert" (id. at 1165 [internal quotation marks omitted]; see Frenchman v Westchester Med. Ctr., 77 AD3d 618, 619).
"An action for medical . . . malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure" (CPLR 214-a[a]; see Haddad v Muir, 215 AD3d 641, 643; Hillary v Gerstein, 178 AD3d 674, 675).
Here, the plaintiff's theory with respect to the continuous treatment doctrine was that NWH acted as the decedent's primary care provider during the subject period and that the alleged misdiagnosis and misprescribed medication regimen were "carried forward" by each of the facilities that treated the decedent subsequent to his discharge, which facilities, the plaintiff alleged, were "affiliated providers . . . within NWH's orbit." However, based on the evidence adduced at trial, including the conflicting opinions of the expert witnesses, it cannot be said that the evidence so preponderated in favor of the plaintiff that the verdict in favor of NWH on the issue of whether there was continuous treatment for the period prior to the decedent's final hospitalization could not have been reached on any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d at 746; cf. Dansby v Trumpatori, 24 AD3d 192, 193).
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stewart v New York Hosp. Queens, 214 AD3d at 920 [internal quotation marks omitted]; see Rosenblatt v Jungman Suh, 219 AD3d 645, 645-646; Mehra v Nayak, 103 AD3d 857, 860). "A psychiatrist may not be held liable for a mere error in professional judgment" (Thomas v Reddy, 86 AD3d 602, 603-604; see Ballek v Aldana-Bernier, 100 AD3d 811, 813-814). Rather, "for a psychiatrist to be held liable for malpractice based upon a decision made in connection with a patient's treatment or a decision to discharge a patient from a hospital, it must be shown that the treatment decisions represented something less than a professional medical determination, or that the psychiatrist's decisions were not the product of a careful examination" (Ozugowski v City of New York, 90 AD3d 875, 876 [citation and internal quotation marks omitted]; see Ballek v Aldana-Bernier, 100 AD3d at 813-814; Thomas v Reddy, 86 AD3d at 604). "A decision that is without proper medical foundation, that is, one which is not the product of a careful examination, is not to be legally insulated as a professional medical judgment" (Bell v New York City Health & Hosps. Corp., 90 AD2d 270, 280-281; see Fotinas v Westchester County Med. Ctr., 300 AD2d 437, 438-439).
Here, a fair interpretation of the evidence supports a finding that the attending psychiatrist's decision to prescribe the stated medications during the decedent's final hospitalization and to discharge him was not "something less than a professional medical determination" (Wilson v State of New York, 112 AD2d 366, 367 [internal quotation marks omitted]; cf. Bell v New York City Health & Hosps. Corp., 90 AD2d at 282).
The plaintiff's remaining contentions are without merit.
DILLON, J.P., WOOTEN, TAYLOR and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court