■ GERTRUDE MARTIN, Respondent, v THOMAS V. McLAUGH-

LIN, Appellant.—Order, Supreme Court, New York County (Kenneth Shorter, J.), entered on or about November 30, 1988, which granted plaintiff's motion to set aside the jury verdict in favor of defendant unless defendant stipulated to judgment in the amount of $21,000, unanimously reversed, on the law and the facts, the verdict reinstated and the entry of judgment thereon directed in favor of defendant, without costs.

Plaintiff brought this action to recover damages for personal injuries suffered as a result of a fall in her apartment building. At approximately 10:00 A.M. on November 6, 1984, the then-50-year-old plaintiff began to walk down the steps leading from the second floor of the building located at 124 E. 117th Street, Manhattan, when, according to her testimony at trial, her left sneaker caught under a piece of metal which was raised at the front of the top step causing her to fall head first down the entire flight of concrete stairs. Plaintiff injured her ankle and stated that a young man from the building helped her back to her apartment where an ambulance was called. Plaintiff was admitted to Metropolitan Hospital where she remained for five days.

Plaintiff further testified that the metal lip had existed on the stairway for five or six years, that the linoleum around the area where she fell was worn and that the lighting fixture in the hallway was not in working order at the time of her fall. She added that since the accident, she was unable to walk for any appreciable distance and was in constant pain.

Plaintiff's doctor, an orthopedic surgeon to whom she was referred by her attorney, and whom she visited on 35 occasions between October of 1985 until the middle of 1986, testified that he treated plaintiff for a fractured ankle after she was released from the hospital. He found that plaintiff had atrophy of the muscles and lacked thickness of her joints which decreased her mobility. In his opinion, the damage to plaintiff's ankle was permanent and would require surgery at some future date.

Plaintiff also testified that she had not worked for two years prior to the incident nor had she been employed since. However, on cross-examination, plaintiff revealed that in fact she had worked for an elderly gentleman in the Bronx both before and after the accident. She insisted, however, that she only cooked his meals and sat with him. Her daughter-in-law testified that after the accident, plaintiff traveled from her apartment in Manhattan to this gentleman's house in the Bronx three times a week by subway. An investigator retained

by counsel for defendant, the owner of the building where plaintiff fell, surreptitiously videotaped plaintiff walking five blocks from her apartment to a bus stop, riding the bus, and then walking up two flights of stairs to an elevated train station. After getting off the train, plaintiff walked to a house in the Bronx where she discarded her cane and walked to a supermarket, returning to the house with two large bags of groceries.

The photograph of the scene of the accident introduced into evidence by plaintiff's counsel showed some discoloration in the linoleum tiles but failed to evidence the existence of a raised piece of metal. In addition, defendant testified that after he purchased the building in 1983, he performed extensive repairs and conducted periodic inspections of the building along with two engineers and a contractor. Although defendant conceded that the surface of the tile at the edge of the first step was worn, he stated that it was worn smoothly and contained no bumps or ruts. He also stated that he had installed a fluorescent lighting fixture in the hallway by the second floor stairwell and that a window on the landing provided additional illumination.

A civil engineer hired by the Department of Housing and Urban Development had inspected the building on April 24th, April 30th, May 1st, and May 2nd of 1984 and found no defects in the stairways. His report also indicated that the fluorescent lighting in the hallways of the building was satisfactory. The engineer added that defendant had not hired him, did not receive a copy of his report and had not accompanied him on the inspections of the building. The superintendent of the building testified that the lighting fixture was working on the date of the accident and that there was no piece of raised metal on the steps when he swept them.

Although plaintiff testified that she fell head first down eight concrete stairs, medical records indicate that she fractured her ankle but suffered no other injuries. The April 1985 hospital record reveals that there was no swelling or tenderness in plaintiff's ankle at that time and that she was able to resume her normal activities. Plaintiff had also told Emergency Service and hospital personnel after her accident that she had only fallen down three steps. The orthopedic surgeon hired by the defense examined plaintiff on April 28, 1988 after receiving the hospital records and the reports from plaintiff's physician. He found that the fracture had healed, that plaintiff had no limitation in her range of motion and that she experienced no pain to the touch. In his opinion, it was highly

unlikely that plaintiff would need surgery on her ankle in the future.

Based on this evidence, in a unanimous verdict, the jury found that defendant was not negligent in the maintenance of the second floor landing and stairway of the building. The Supreme Court, however, granted plaintiff's motion to set aside the verdict unless defendant stipulated to judgment in the amount of $21,000. We reverse and reinstate the jury's verdict.

"It is settled that a jury verdict in favor of defendant may not be set aside unless it plainly appears that the evidence so preponderates in favor of the plaintiff that the verdict for the defendant could not have been reached on any fair interpretation of the evidence" *(Marton v McCasland,* 16 AD2d 781, 782; *Niewieroski v National Cleaning Contrs.,* 126 AD2d 424, *lv denied* 70 NY2d 602). Stated another way, " 'a jury verdict in favor of a defendant should not be set aside unless "the jury could not have reached the verdict on any fair interpretation of the evidence" *(Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643 * * *)' " *(Niewieroski v National Cleaning Contrs., supra,* at 425).

In determining a motion to set aside a verdict as contrary to the weight of the evidence pursuant to CPLR 4404 (a), the court must consider all of the proof adduced in assessing whether the verdict fairly reflects the evidence in the case. The trial court cannot freely interfere with any verdict that is unsatisfactory to it, or with which it disagrees, but instead must proceed with considerable caution, affording great deference to the fact-finding function of the jury *(Nicastro v Park,* 113 AD2d 129).

While recognizing that the jury discredited all of plaintiff's testimony, the court set aside the verdict in any event based on its own interpretation of the other evidence introduced at trial, The jury, however, was presented with this proof and had the responsibility of resolving any dispute as to the weight to be afforded such evidence and as to the credibility of the witnesses *(Niewieroski v National Cleaning Contrs., supra).* We conclude that the jury reached its verdict on a fair interpretation of the evidence and that in setting aside its verdict, the trial court usurped the jury's function.

Accordingly, the order appealed from is reversed, the verdict is reinstated and the action is remitted to the Supreme Court for entry of an appropriate judgment. Concur—Kupferman, J. P., Carro, Rosenberger, Ellerin and Rubin, JJ.