■ RONALD NORDHAUSER, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant, et al., Defendant.—In an action to recover damages for personal injuries resulting from medical malpractice, the defendant New York City Health and Hospitals Corporation appeals from a judgment of the Supreme Court, Queens County (Rosenzweig, J.), entered August 31, 1988, which, upon a jury verdict finding it 70% at fault and the plaintiff 30% at fault, and finding that the plaintiff had suffered damages in the amount of $8,984,121, is in favor of the plaintiff and against it in the principal sum of $6,288,884.70. Justice Bracken has been substituted for former Justice Brown *(see,* 22 NYCRR 670.1 [c]).

Ordered that the judgment is reversed, on the law, and a new trial is granted, with costs to abide the event.

On May 28, 1981, the then 33-year-old plaintiff Ronald Nordhauser went to the emergency room of Elmhurst City Hospital, a facility operated by the defendant New York City Health and Hospitals Corporation, complaining of chest pains.

Thereafter, the plaintiff left the emergency room of Elmhurst City Hospital, without being treated, stating that he was going to seek treatment at another nearby hospital. He suffered cardiac arrest on the street outside Elmhurst City Hospital. The rescue team of Elmhurst City Hospital responded and brought the plaintiff back into the facility, where he was admitted at 7:15 P.M. Although the plaintiff was resuscitated, he suffered severe and permanent brain damage, and remains confined to a nursing home. The plaintiff commenced this action against the appellant and Mercedes Ghobrial, an employee of the appellant who was the triage nurse on duty on the evening in question, alleging, *inter alia*, that they departed from standard accepted medical and hospital practice in failing to diagnose earlier the existence of his condition and to render prompt emergency attention and treatment.

The pivotal issue in this case is the question of how long the plaintiff waited for treatment in Elmhurst City Hospital's emergency room before leaving to seek treatment at another hospital. The plaintiff's position that he waited in the emergency room from 40 to 70 minutes without receiving treatment was pitted against the appellant's contention that the plaintiff left the hospital 15 minutes after his arrival. At the conclusion of the trial, the jury resolved the issue against the appellant and returned a verdict finding that the appellant was negligent, that its negligence was the proximate cause of the plaintiff's injuries, and that the plaintiff himself was contributorily negligent. The jury found no negligence on the part of Nurse Ghobrial. In apportioning liability, the jury attributed 70% of the fault to the appellant and 30% to the plaintiff. Damages were awarded to the plaintiff in the amount of $8,984,121 which the trial court reduced to $6,288,884.70 to account for the plaintiff's contributory fault.

Thereafter, the appellant moved to set aside so much of the verdict as found that it was 70% at fault in the happening of the accident, and for a new trial pursuant to CPLR 4404 (a). The appellant alleged, *inter alia*, that the jury's verdict finding it negligent and Nurse Ghobrial not negligent was against the weight of the evidence, and the jury's award of damages was excessive. The trial court denied the motion in all respects, holding that the evidence provided a rational basis for the jury's findings, and the amount awarded in damages was not so excessive as to shock the court's conscience. The appeal is from the judgment entered upon the verdict after the appellant's motion to set aside the verdict was denied.

As a general proposition, once an appeal from an adverse

determination is properly presented to the Appellate Division, "a court may fashion complete relief to the appealing party" *(Hecht v City of New York,* 60 NY2d 57, 62; *see, Cover v Cohen,* 61 NY2d 261, 277). In fashioning such relief, the Appellate Division has sweeping authority to review the trial evidence for the purpose of determining whether the verdict was against the weight of the evidence. While the courts are cautioned to exercise this discretionary power sparingly to avoid usurping the jury's function, the courts may set aside a jury verdict and grant a new trial when the jury's determination is palpably incorrect and a substantial injustice would be done if the verdict were sustained *(see, Nicastro v Park,* 113 AD2d 129, 133). A weight of the evidence inquiry involves a balancing of many factors *(see, Cohen v Hallmark Cards,* 45 NY2d 493, 498-499). The operative factor in the court's determination as to whether to set aside a jury's verdict is a finding that the jury could not have reached its verdict on any fair interpretation of the evidence *(see, Nicastro v Park, supra,* at 134). The standard of fair interpretation is applied whether the jury verdict is in favor of the plaintiff or the defendant *(see, Nicastro v Park, supra; O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 439).

Guided by the foregoing principles, we conclude that the jury's verdict finding the appellant negligent and the defendant Ghobrial not negligent should be set aside as against the weight of the evidence. The trial court admitted into evidence on the plaintiff's direct case, over the defense counsel's strenuous objection, a pretrial statement by Nurse Ghobrial to an investigator employed by the plaintiff in which she stated that the plaintiff had presented himself in the hospital's emergency room at 6:00 P.M. on the date in question. This item of evidence coupled with the hospital record indicating that the plaintiff departed the emergency room at 6:45 P.M. was extremely damaging to the appellant's position that no negligence on its part was demonstrated, because the plaintiff had allegedly waited to be treated for only 15 minutes. The plaintiff's expert testified that, if one accepted the veracity of the hospital records indicating that Ghobrial interviewed the plaintiff at 6:35 P.M. and the plaintiff departed the hospital at 6:45 P.M., the hospital could not be deemed to have deviated from accepted standards of medical care. However, the plaintiff's expert was of the opinion that any failure by Nurse Ghobrial to apprise the emergency room staff of the severity of the plaintiff's condition or the failure to render medical treatment to the plaintiff during a period of 45 minutes to one

hour would constitute a departure from accepted medical standards.

Contrary to her pretrial statement, the defendant Ghobrial testified at the trial on behalf of the defendants that the plaintiff arrived in the emergency room of the hospital at 6:30 P.M. That trial testimony was supported by Ghobrial's testimony at an examination before trial which was read into the record during the plaintiff's direct case. Ghobrial further testified that she took the plaintiff's vital signs at 6:35 P.M., walked him to the registration clerk, and at about 6:40 P.M. placed him on a stretcher and wheeled him into the emergency treatment area. The hospital records agree with the times specified in Ghobrial's testimony and, as previously noted, indicate the plaintiff's departure time at 6:45 P.M.

There is no question that legally sufficient evidence of the hospital's malpractice was presented. To sustain a determination that a verdict is not supported by legally sufficient evidence, a harsh standard applies, requiring that there be "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, supra, at 499). The "fair interpretation" standard utilized in determining whether a jury verdict is against the weight of the evidence is less rigorous and more difficult to apply to the facts before us.

The trial court instructed the jury that the damaging pretrial statement made by Ghobrial to the plaintiff's investigator was properly admissible against Ghobrial as an admission. The court further instructed that the jury could not consider the statement as evidence against the appellant. Although at the trial the plaintiff presented testimony from his fiancee and his father suggesting that he had arrived at the hospital at 6:00 P.M., the critical evidence of the arrival time and, hence, of the hospital's malpractice, was Nurse Ghobrial's statement to the investigator. It is presumed, until the contrary appears, that the jury followed the instructions given by the court (see, Fisch, New York Evidence § 1134 [2d ed]; 4 NY Jur 2d, Appellate Review, § 419). Given the posture in which the case was presented, the only logical basis for the jury's verdict is a finding that the appellant was negligent separate and apart from Ghobrial's actions. Support for such a conclusion seems to require that the jury credit Ghobrial's statement that the plaintiff arrived at 6:00 P.M. The jury must then have found that the plaintiff was promptly registered by the triage nurse, i.e. Ghobrial, and, thereafter, was left unattended by other

personnel until he left at 6:45 P.M. Viewed in light of the court's limiting instructions on the issue of the admissibility of Ghobrial's statement, it cannot be said under any fair interpretation of the evidence that the appellant was negligent and its negligence was the proximate cause of the plaintiff's injuries but that Nurse Ghobrial's conduct was not negligent giving rise to vicarious liability on the appellant's part.

A determination that a verdict is against the weight of the evidence does not require the total absence of factual issues *(see, Nicastro v Park, supra,* at 135). Accordingly, the conflicting evidence presented at the trial on the key issue in dispute does not deprive this court of the power to set aside the verdict and grant a new trial. Notably, the plaintiff argues on appeal that the hospital record indicating a 6:45 P.M. departure time was fabricated and he actually departed the hospital at 7:10 P.M., just moments before he suffered cardiac arrest and was readmitted to the hospital. This contention is purely speculative. We have found no foundation in the record to support this claim.

Although not necessary to our determination, we are compelled to address several issues to avoid error upon the retrial. The appellant's contention that Ghobrial's pretrial statement should have been precluded as the product of an interview conducted by an investigator at the direction of the plaintiff's counsel in violation of the Code of Professional Responsibility DR 7-104 (A) (1) is devoid of merit *(see generally, Niesig v Team I,* 76 NY2d 363, 374). Even assuming, *arguendo,* that Ghobrial's statement was unethically obtained, it would not be inadmissible solely on that ground *(see, Stagg v New York City Health & Hosps. Corp.,* 162 AD2d 595). The trial court also did not err in permitting Ghobrial's statement into evidence as an admission *(see,* Richardson, Evidence § 209 [Prince 10th ed]). Furthermore, its instructions that Ghobrial's admission should not be considered against the appellant is in accord with the current New York law, the so-called "speaking agent" exception to the hearsay rule *(see, Loschiavo v Port Auth.,* 58 NY2d 1040; *Kelly v Diesel Constr. Div.,* 35 NY2d 1). Under that exception, a declaration by an agent without authority to speak for the principal, even where the agent was authorized to act in the matter to which his declaration relates, is not an admission receivable against the principal *(see, Loschiavo v Port Auth., supra;* Fisch, New York Evidence § 800 [2d ed]; *cf., Niesig v Team I, supra,* at 374).

Lastly, on the issue of damages, were we not ordering a new

trial on the issue of liability, we would reverse on the ground that the jury's assessment of damages was sufficiently excessive as to shock the conscience of the court *(see, Reynolds v Merit Oil,* 167 AD2d 521, 522-523; *cf.,* CPLR 5501 [c] [applicable only to trials commenced *after* Aug. 1, 1988]). Thompson, J. P., Bracken, Eiber and Rosenblatt, JJ., concur.