MURRAY SOBIE et al., Appellants, v KATZ CONSTRUCTION CORPORATION, Doing Business as FAIRMONT CONSTRUCTION COMPANY, Also Known as FAIRMONT CORPORATION, Respondent, et al., Defendants.

First Department, March 18, 1993

50

## APPEARANCES OF COUNSEL

*Adam B. Curtis* of counsel *(Bigham Englar Jones & Houston,* attorneys), for Murray Sobie, appellant.

*Edward J. Martz* for Duane Cerney and others, appellants.

*Stuart E. Kahan* of counsel *(Levenson Pressman,* attorneys), for respondent.

## OPINION OF THE COURT

MILONAS, J.

Plaintiffs-appellants Duane and Linda Cerney and her

daughter, Suzi Galloway, rented the bottom two floors of a building located at 456 12th Street in the Park Slope section of Brooklyn and which was owned by plaintiffs-appellants Michael Sobie and his father, Murray Sobie. Michael Sobie resided on the third floor of the structure. Next to the Sobie property was a large garage that defendant Katz Construction Company in 1986 contracted with the owner to demolish, then to excavate the land and erect several residential buildings thereon. Defendant Castellano Construction Company was retained as the excavation subcontractor. The job supervisor employed by Katz was Theodore Vays, who was also engaged in overseeing other projects; Castellano also had on-site supervisors. It is significant that when work began, Katz had not obtained the requisite excavation permits but only a demolition permit. Thus, notwithstanding that Katz was legally authorized only to raze the garage and remove the rubble, it still proceeded to perform excavation. Although the law also mandates notice of the work to the inhabitants of the adjoining land, such notice was never sent to or received by the Cerneys. At trial, Abraham Katz, one of the principals of Katz claimed that the notice was provided to the owners.

Linda Cerney described a number of instances in which there was damage to her property or nuisance resulting from defendants' activities. She testified that the problems started as early as July 10, 1986, and, two days later, she had a conversation with Vays, who informed her that the wall at the back patio had to be destroyed in order for the work to continue. However, Vays ignored her demand that since the wall was on the Sobie property, it not be disturbed. In her presence, a bulldozer, operating on his instructions, destroyed the wall, impairing her backyard and garden. Her subsequent complaints, similarly, had no effect in getting defendants to alter their methods of demolition and excavation. At one point, while Duane Cerney was sitting in his first-floor living room, a large solid wooden beam came through the wall from the outside, landing in the middle of the room. The local police were contacted, and, the next day, a Katz crew arrived at the Cerney apartment to repair the hole.

By the end of July, the excavation level had reached below the foundation of the Sobie house. Even after Linda Cerney observed the building beginning to lean toward the excavation site, the excavation continued without any effort being made to shore up or support the structure. On July 30, while an attempt was underway to remove a buttress, the Sobie house

collapsed. Many of plaintiffs' personal possessions were destroyed and/or scattered, and not only were Duane and Linda Cerney rendered homeless, but, since they performed much of their clothing design business at home, they were unable to pursue their occupation. The building was promptly condemned. Ronald Silvers, a city inspector who investigated the collapse, stated at the trial that he had served summonses on Vays for beginning work without a permit and for excavating without adequate protection. He concluded that the work done by Katz was illegal.

The Sobie house, which had been purchased in 1973 for $247,500, was sold for $175,000 after the accident to Katz, doing business as Fairmont Corporation, in an as-is condition, and the building was torn down. The lot was then added to the parcel being developed. According to plaintiffs' expert witness, the property, including both the house and the land, was worth $290,000 as detailed in a written report received into evidence. Also introduced were numerous checks and invoices documenting amounts expended to repair or replace property destroyed or lost during the collapse. There was, in addition, testimony relating to the rental income generated by the building. Finally, despite repeated objections from counsel, Katz's attorney cross-examined Michael Sobie concerning the insurance implications of the loss suffered by him and his father. At the conclusion of the evidence, a special verdict sheet was submitted to the jury, which found that Katz was not guilty of culpable conduct, defined as negligence, nuisance or trespass, but that Castellano was guilty of such conduct, that Katz's percentage of the fault was zero whereas Castellano was 100% responsible and that the Sobies were not entitled to any damages while the Cerney plaintiffs should recover $34,000. The jury also decided that Katz's conduct was so malicious, wanton and reckless as to justify punitive damages and yet declined to award either the Sobies or Cerneys any punitive damages against Katz although it did award $15,000 in punitive damages against Castellano in favor of both sets of plaintiffs.

The Supreme Court, despite the apparent inconsistency of the jury's determination, declined to set aside the verdict with the exception of vacating the punitive damages awarded to the Sobies against Castellano on the ground that the jury's failure to give them any compensatory damages rendered this inappropriate. In the opinion of the court, "[t]he jury in the case at bar from the way the proof was presented, could have

reasonably found as they did. The fact that the court does not agree with their verdict is of no consequence." However, not only was the jury's finding herein inconsistent, but the verdict should have been set aside as against the weight of the evidence. As this Court declared in *Martin v McLaughlin* (162 AD2d 181, 184): " 'It is settled that a jury verdict in favor of defendant may not be set aside unless it plainly appears that the evidence so preponderates in favor of the plaintiff that the verdict for the defendant could not have been reached on any fair interpretation of the evidence' *(Marton v McCasland,* 16 AD2d 781, 782; *Niewieroski v National Cleaning Contrs.,* 126 AD2d 424, *lv denied* 70 NY2d 602). Stated another way, ' "a jury verdict in favor of a defendant should not be set aside unless 'the jury could not have reached the verdict on any fair interpretation of the evidence' *(Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643 * * *)" ' *(Niewieroski v National Cleaning Contrs., supra,* at 425)."

In that regard, an examination of the record reveals an almost total absence of proof that the work undertaken by Katz was performed in a legal and proper manner notwithstanding its assertion that it was carried out lawfully. Indeed, it was uncontroverted that Katz, as general contractor, had an affirmative duty to file for the necessary · permits and was, accordingly, obligated to procure excavation permits prior to commencing excavation at the site, and this it did not do. It was also undisputed that the excavation work for which Katz was retained caused the collapse of the Sobie building. Consequently, the evidence clearly showed that Katz excavated illegally and in violation of the building code, even if the actual work was primarily done by the subcontractor, and received summonses for its derelictions. Moreover, Katz made absolutely no effort to shore up or support the Sobie structure until after it had already collapsed. Under these circumstances, the proof so preponderates in favor of plaintiffs that a verdict for Katz could not reasonably have been arrived at by any fair interpretation of the evidence *(see, Martin v McLaughlin, supra).*

Further, pursuant to CPLR 4111 (c), when a general verdict is accompanied by answers to interrogatories, and the answers are inconsistent with each other and one or more is incompatible with the general verdict, the court will either direct the jurors to reconsider their answers and verdict or order a new trial. The statutory alternatives, which are the only available options *(Mars Assocs. & Normel Constr. Corp. v*

*New York City Educ. Constr. Fund,* 126 AD2d 178, 187, *lv dismissed* 70 NY2d 747), were not followed by the Supreme Court, and it is impossible to view the jurors' answers herein as anything other than inconsistent. Certainly, under the facts educed at trial, at the very least the jury's determination that Katz's conduct warranted punitive damages but not compensatory damages simply cannot be reconciled. Katz's culpable conduct was the illegal work which was permitted to proceed until it presented a clearly dangerous condition, and Katz either ignored this situation or failed to take any steps to inform itself of what was happening. Consequently, the jury's finding of no negligence by Katz does not accord with its determination that Katz acted so maliciously, wantonly or recklessly as to justify punitive damages since, under the facts herein, there is no way to perceive maliciousness, wantonness or recklessness that does not, of necessity, involve negligence as well.

■ As for the matter of compensatory damages, it should be noted that Katz introduced no direct evidence to refute the combination of expert testimony and documents demonstrating the substantial value lost in the building, personal property and rental income to the Sobies for which they received only $175,000 from the sale to Fairmont. Instead, it relied almost entirely on its cross-examination regarding insurance benefits paid to the Sobies. Yet, the rule is that evidence of insurance coverage is not generally admissible in a negligence action *(see,* Richardson, Evidence § 169 [Prince 10th ed]; *Allen v Harrington,* 156 AD2d 854). While an isolated reference to insurance coverage *(Div-Com, Inc. v F. J. Zeronda, Inc.,* 136 AD2d 844) or the erroneous admission of such evidence *(see, Rush v Sears, Roebuck & Co.,* 92 AD2d 1072) does not always require reversal, defendant's cross-examination in the instant matter does mandate reversal. The defense proof with respect to damages was extremely weak and, indeed, rested almost entirely on the improper testimony regarding the Sobies' insurance benefits, and defense counsel made much use of this fact. It was, therefore, error to enable the jury to hear evidence of the Sobies' insurance coverage.

For all of the foregoing reasons, the judgment being appealed should be reversed and the matter remanded for a new trial.

Judgment of the Supreme Court, New York County (Bernard L. Reagan, J.), entered on April 22, 1991, which, following a jury trial, awarded compensatory damages against de-

fendant Castellano Construction Company in the amount of $42,393 to the Cerney plaintiffs and no damages to the Sobie plaintiffs, should be reversed, on the law and the facts, and the matter remanded for a new trial, with costs and disbursements.

SULLIVAN, J. P., KUPFERMAN and Ross, JJ., Concur.

Judgment, Supreme Court, New York County, entered on April 22, 1991, which, following a jury trial, awarded compensatory damages against defendant Castellano Construction Company in the amount of $42,393 to the Cerney plaintiffs and no damages to the Sobie plaintiffs, is reversed, on the law and the facts, and the matter remanded for a new trial, with costs and disbursements.