■ SUSAN FONTANA, Respondent, v GEORGE KURIAN, Appellant. [625 NYS2d 677] —Yesawich Jr., J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Burrows, J.), entered February 18, 1993 in Westchester County, which granted plaintiff's motion to set aside a verdict in favor of defendant and ordered a new trial.

In January 1988, plaintiff consulted defendant (a general surgeon) with respect to a small lump in her right elbow crease. Defendant suggested that surgical removal of the lump would be prudent, due to the possibility that it was cancerous, and plaintiff agreed to that course of action. The surgery disclosed a ganglion cyst firmly attached to the brachialis muscle and tendon. Defendant removed the cyst by teasing it away from, among other things, the radial artery and the radial nerve, and then cutting it from the tendon.

Following the surgery, plaintiff experienced pain and numbness in her hand. Dissatisfied with defendant's level of concern over her persistent sensory and motor deficits, she consulted a neurologist, who referred her to Marciano Miclat, a specialist in hand and reconstructive surgery, who concluded that plaintiff's radial nerve had been injured during the previous operation. He performed exploratory surgery, during the course of which, he avers, he discovered that the nerve had been partially transected, and repaired the defect.

Plaintiff maintains that, though she recovered some function in her right arm and hand after the second surgery and several months of physical therapy, she has never regained full use of the arm. In December 1988, plaintiff commenced this action, charging defendant with malpractice and failure to obtain her informed consent to the first surgery. A trial was held, at the conclusion of which the jury found, in response to the specific verdict sheet question relevant to this appeal, that defendant did not transect plaintiff's radial nerve. On plaintiff's motion, this aspect of the verdict was set aside as against the weight of the evidence and a new trial was ordered. Defendant appeals.

Because it cannot be said that the jury verdict is inconsistent with any fair interpretation of the evidence *(see, Figaro v*

*Price,* 195 AD2d 440, 441; *Tannor v Pierce Coach Line,* 131 AD2d 658, 659-660), we reverse. When confronted with a motion to set aside a verdict as against the weight of the evidence, the trial court must carefully balance "the great deference to be accorded to the jury's conclusion" *(Nicastro v Park,* 113 AD2d 129, 137) against the court's own obligation to assure that the verdict is fair *(see, supra,* at 137). While the breadth of the court's discretion varies with the circumstances presented *(see, supra,* at 136), there is ample foundation in the case law for the principle that when a verdict has been rendered in favor of the defendant in a tort case—especially if resolution of the case turns on evaluation of conflicting expert testimony—a court should be particularly hesitant to intervene *(see, Wierzbicki v Kristel,* 192 AD2d 906, 907; *Kirkpatrick v Timber Log Homes,* 190 AD2d 1072; *Nicastro v Park, supra,* at 134; *Ellis v Hoelzel,* 57 AD2d 968, 969). Inasmuch as this circumstance prevails here, and given the fact that the evidence is not so heavily weighted in favor of plaintiff that it can be said that the contrary verdict is "palpably incorrect" *(Nordhauser v New York City Health & Hosps. Corp.,* 176 AD2d 787, 789) and thus clearly unfair, the jury's verdict should not have been set aside *(cf., Walsh v Staten Is. Obstetrics & Gynecology Assocs.,* 193 AD2d 672, *lv denied* 82 NY2d 845).

It is noteworthy that although Miclat placed great emphasis on the fact that scar tissue had formed around the radial nerve after the operation performed by defendant, Miclat also testified that this result could ensue even if the nerve was not transected, and that a "blunt injury" to the muscle or other tissue in the vicinity could cause such scarring. Defendant's expert, Anthony Brittis, a neurosurgeon, pointed out that the 2.5-centimeter gap between nerve fibers on the lateral side of the nerve was measured after Miclat had removed the scar tissue, and that it would have been impossible for Miclat to have seen a break in the nerve, as he had claimed, after scar tissue had formed in the area. Brittis' opinion, that there had been no gap prior to Miclat's surgery, was compatible with defendant's testimony, which the jury apparently believed, that he had not cut the nerve, but had simply teased or peeled the ganglion from it, using blunt dissection techniques.

Defendant and Brittis also opined that the functional deficit plaintiff experienced was the consequence of neurapraxia, or temporary nerve paralysis, resulting from stretching or other trauma to the nerve fibers, which would eventually resolve without further surgical intervention, and that the speed of

plaintiff's recovery from the second surgery was consistent with this hypothesis. Moreover, these opinions were not plainly contradicted by the electromyogram report, which called for further testing to determine whether the loss of nerve conduction was caused, as defendant attested, by a physiological block, or by an actual severance of the nerve fibers. Some of Brittis' opinions, as plaintiff urges, did not have an especially strong basis in the record, and he was admittedly favorably biased toward doctors generally and defendant specifically, but these flaws in his testimony were fully explored during a lengthy and spirited cross-examination and merely presented a credibility question for the jury. In sum, there was sharply conflicting expert testimony, and while a different outcome would not have been unreasonable, it cannot be said that the jury's resolution of these conflicts was so unjust as to warrant judicial interference *(see, D'Angelo v Bryk,* 205 AD2d 935, 936; *Moore v Health Ins. Plan,* 186 AD2d 118).

Insofar as plaintiff now argues that Brittis' testimony was baseless and hence should have been stricken in its entirety, it suffices to note that this was not advocated at any point during the trial and, in any event, is without merit, for Brittis' opinions were, for the most part, predicated on his review of the medical records—including pathology reports, test reports and notes regarding plaintiff's recovery from both surgeries, as well as defendant's operative notes—and on facts about the surgery gleaned from his discussions with defendant.

Mikoll, J. P., Mercure, Crew III and Peters, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion denied and jury verdict reinstated.