(August 21, 2003)

■ ANNE BORDEN, Respondent, v CAPITAL DISTRICT TRANSPORTATION AUTHORITY, Appellant. [763 NYS2d 860] —Carpinello, J. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered June 5, 2002 in Schenectady County, which granted plaintiff's motion to set aside the verdict and ordered a new trial.

Plaintiff commenced this action against defendant claiming that it negligently retained John Humphrey, a bus driver who purportedly posed a known danger to its female patrons. Plaintiff alleged that Humphrey forcibly sodomized and sexu-

ally abused her while the two were alone on a bus on the afternoon of October 15, 1996. The incident allegedly occurred in the middle of a public street in the City of Schenectady, Schenectady County, near a staging area for many of defendant's buses. According to plaintiff, the alleged sodomy ended when another bus driver, en route to that staging area, pulled up beside Humphrey's bus in an attempt to pass and sounded his horn. Plaintiff did not sue Humphrey for her emotional and psychological damages as a result of this alleged incident.

At trial, despite an evidentiary error prejudicial to defendant, the jury returned a verdict in its favor.[1] Specifically, the first question on the verdict sheet asked, "Did the non-party, John Humphrey, engage in negligent or intentionally harmful conduct toward [plaintiff] on October 15, 1996?" The jury unanimously responded in the negative and, thus, reached no other issue. Supreme Court, however, granted an oral motion to set aside this verdict. Defendant appeals. Finding, as we do, that Supreme Court erred in granting plaintiff's motion, we reinstate the jury verdict.

The narrow issue before us is whether Supreme Court, by granting plaintiff's motion to set aside the verdict, erred in determining that the jury failed to properly consider the evidence that was before it, which included the improperly admitted evidence of Humphrey's guilty plea (see n 1, supra). While the resolution of a motion to set aside a jury verdict as against the weight of the evidence "involves an application of that professional judgment gleaned from the Judge's background and experience as a student, practitioner and Judge" (Nicastro v Park, 113 AD2d 129, 135 [1985]), there must be a judicial finding that a contrary verdict could not have been reached upon any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]; Maisonet v Kelly, 228 AD2d 780, 781 [1996]).

---

1. Supreme Court erred in permitting evidence, over strenuous and repeated defense objections, that Humphrey had pleaded guilty to certain crimes, including sexual abuse in the first degree via an *Alford* plea stemming from plaintiff's allegations. This evidence constituted hearsay which was only admissible against defendant upon plaintiff's showing that it fell within an exception to the hearsay rule, namely, a declaration against Humphrey's penal interest. Plaintiff, however, wholly failed to demonstrate that Humphrey was unavailable to testify at trial (*compare People v Thomas*, 68 NY2d 194 [1986], *cert denied* 480 US 948 [1987]; *Kelleher v F.M.E. Auto Leasing Corp.*, 192 AD2d 581, 583 [1993]; *Merchants Mut. Ins. Co. v Arzillo*, 98 AD2d 495 [1984]) and, thus, the evidence was inadmissible (*see 2641 Concourse Co. v City Univ. of N.Y.*, 147 AD2d 379 [1989], *affg on op below* 135 Misc 2d 464 [1987]; *People v Davis*, 122 AD2d 889, 890 [1986]; *see also Brereton v McEvoy*, 44 AD2d 594, 595-596 [1974]; *Vanderhule v Berinstein*, 285 App Div 290, 295 [1954]).

Fundamentally, it was plaintiff's obligation to prove all of the elements of her negligence case against defendant, including the element of harm (*see Detone v Bullit Courier Serv.*, 140 AD2d 278, 279 [1988], *lv denied* 73 NY2d 702 [1988]; *see also Vanderhule v Berinstein*, 285 App Div 290 [1954]; *see generally* 29 Am Jur Trials, Negligent Hiring of Employee § 10). As aptly stated in *Detone v Bullit Courier Serv.* (*supra*): "An employer may, of course, be required to answer in damages for the tort of an employee as against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior *which caused the injured party's harm*" (*id.* at 279 [emphasis added]). Here, defendant defended the negligence charge by disputing that plaintiff was indeed harmed by Humphrey (i.e., no sodomy took place) and by disputing that it had notice of any propensity on his part to sexually abuse women. To be sure, a significant portion of the evidence produced at the trial focused on Humphrey's alleged misconduct with other women prior to October 15, 1996 and defendant's knowledge of, and responses to, such incidents. We need not comment on the weight of such evidence since the first factual issue for jury resolution concerned whether Humphrey engaged in the conduct that allegedly harmed plaintiff on October 15, 1996. With respect to this threshold issue, plaintiff's version of events and overall credibility were challenged by defendant. In short, from the very beginning of the trial, the defense theory on this issue was simple and straightforward, namely, that Humphrey did not commit any act of forcible sodomy or sexual abuse against plaintiff that day and that plaintiff had conspired with at least one other woman, Arlene Sebast, to exaggerate and/or fabricate the alleged attack in order to obtain monetary compensation.

We now turn to the evidence at trial. According to plaintiff, after pulling the bus over near the staging area, Humphrey emerged from his seat, unzipped his pants and exposed himself. He then approached her, touched the outside of her sweater and forced her to sodomize him. Moreover, again according to plaintiff, during the course of same, another "bus pulled up * * * almost directly beside him, and it [*sic*] beeped its horn," at which point Humphrey returned to his seat. Thus, plaintiff herself pinpoints the act of forcible sodomy as occurring prior to and contemporaneously with this second driver pulling up beside Humphrey's bus *and* sounding his horn.

Plaintiff's own version of events, however, was directly contradicted by the driver of this second bus, Randy Fitch. Ac-

cording to Fitch, as he pulled up to Humphrey's bus and sounded his horn, he looked inside the bus. Fitch, who had a clear and unobstructed view inside the bus, observed plaintiff sitting alone with a normal but serious expression on her face. He saw no other person near her at the time and further recounted that, as soon as he sounded his horn, Humphrey immediately moved his bus. Notably, while plaintiff claimed that she was sitting directly behind the driver's seat during the act of sodomy, Fitch placed her in an aisle-facing seat on the right side of the bus. Thus, Fitch's testimony, which clearly conflicted with plaintiff's testimony in significant respects, created a credibility dispute for the jury to resolve (*see e.g. Pyptiuk v Kramer*, 295 AD2d 768, 769-770 [2002]; *Carter v Wemple*, 267 AD2d 641, 642 [1999]).[2] This contradiction, however, was not the only factual and credibility contest during the trial.

Defendant also elicited facts demonstrating that plaintiff never initially told anyone, including defendant's employees, her friends, the police or her treating therapist with whom she had a scheduled appointment on October 21, 1996, that Humphrey forced her to sodomize him. Rather, immediately after the alleged incident and up until October 23, 1996, she reported only that Humphrey exposed himself and propositioned her for oral sex. Moreover, consistent with its theory of the case, defendant also put forth evidence that plaintiff had already consulted an attorney before the alleged incident with Humphrey that day. Specifically, Richard Vines, superintendent of defendant's Schenectady operations, testified that he drove plaintiff home following the alleged incident, during which time she informed him that she had already contacted an attorney about Humphrey. With respect to this conversation, plaintiff testified that she did not "remember when [she] consulted with an attorney, but if [she] had [she] probably told [Vines] that." She thereafter equivocated, claiming instead that she did not consult an attorney until after October 15, 1996.

Next, plaintiff claimed during her testimony that she had been the victim of inappropriate behavior by Humphrey on July 5, 1996 (i.e., that he kissed and grabbed her as she departed his bus) and that defendant knew about the incident,

---

**2.** Tellingly, the jury seemed to have honed in on this very issue. The jurors had been deliberating for less than 90 minutes when they came back with their first and only request for a read back, i.e., plaintiff's testimony on direct and cross-examinations concerning what transpired between the time that Humphrey pulled the bus over near the staging area and then proceeded to drive again. Less than one hour after this read back, the jury announced that it had reached its verdict.

but did nothing about it. Specifically, according to plaintiff, she reported this incident to Chuck Cohen, defendant's director of transportation, on July 11, 1996 and then "follow[ed] up" with a faxed letter to him. No record of this complaint was found by defendant. Moreover, Cohen testified that he was on vacation the week of July 11, 1996, denied ever speaking with plaintiff about any incident with Humphrey and confirmed that defendant never received any alleged facsimile from her. Notably, no transmittal sheet was produced in support of the claim.

Plaintiff's credibility was also disputed on a number of other, albeit minor, grounds. For example, plaintiff initially denied having any contact with Sebast, another alleged victim of Humphrey, before October 15, 1996, even though Sebast clearly testified at trial that the two women had met during the summer of 1996 at which time they discussed Humphrey's inappropriate behavior toward women and what they could do about it. Plaintiff later equivocated on this point, admitting that it was possible that she had met with Sebast before the subject incident. The jury further learned that plaintiff had previously been charged with filing a false incident and that, as of October 15, 1996, had been suffering from borderline personality disorder for some years for which she was receiving regular mental health counseling and treatment. To this end, the record reveals that plaintiff has had a variety of legal, relationship, housing and child care problems.

The standard for setting aside the jury verdict in favor of defendant as against the weight of the evidence requires a finding that the "trial evidence so preponderated in favor of plaintiff[ ] that a contrary verdict could not have been reached upon any fair interpretation of that evidence" (*Maisonet v Kelly*, 228 AD2d 780, 781 [1996], *supra*). We cannot make such a determination here. Rather, noting that "defendant is entitled to the benefit of every favorable inference reasonably drawn from the facts adduced at trial" (*Pyptiuk v Kramer, supra* at 770; *see Triggs v Kelly*, 182 AD2d 963, 964 [1992]) and that this case required resolution of sharply disputed factual and witness credibility issues (*see e.g. Bernstein v Red Apple Supermarkets*, 227 AD2d 264, 265 [1996], *lv dismissed* 89 NY2d 961 [1997]; *Durkin v Peluso*, 184 AD2d 940, 942 [1992]; *Martin v Mc-Laughlin*, 162 AD2d 181 [1990]; *Pannetta v Ramo*, 138 AD2d 686, 687 [1988]), we find that the jury was entitled to conclude that plaintiff's story was unworthy of belief and reach the verdict that it did. In short, viewing all of the evidence before the jury and that portion of the jury charge which instructed that it may consider Humphrey's guilty plea as *some* evidence

that the act charged was committed (*but see* n 1, *supra*), the verdict in favor of defendant was a fair reflection of the evidence to be accorded due deference (*see Fontana v Kurian*, 214 AD2d 832, 833 [1995], *lv denied* 86 NY2d 707 [1995]; *Nicastro v Park*, 113 AD2d 129 [1985], *supra*).

Mercure and Kane, JJ., concur.

Lahtinen, J. (concurring).

Recognizing the important reasons underlying the broad deference accorded a jury's verdict (*see Whitmore v Rowe*, 245 AD2d 669 [1997]), I concur with the majority's conclusion that Supreme Court erred in setting aside the verdict.

Prefatorily, I find little relevance in whether John Humphrey's *Alford* plea was properly admitted into evidence when analyzing the issue regarding the weight of the evidence. It is the evidence that was actually before the jury—whether or not properly admitted—that delineates the factual field to be considered on a weight of the evidence challenge to a verdict. If evidentiary errors were made at trial, those errors present issues for review separate from the issue of whether the jury acted properly based upon the evidence that was before it.

Review of this record reflects that one of the defenses asserted by defendant was that the incident never occurred as described by plaintiff. Defendant produced proof at trial in support of this defense and counsel argued the defense as part of his summation. With regard to Humphrey's plea in the criminal case, Supreme Court charged the jury, without objection, that the plea "may be considered as some evidence that the act charged was committed." It is reasonable to conclude that the jury did exactly as instructed and gave the plea some weight in its analysis. However, there was also evidence supporting the position urged by defendant and, in light of such evidence and the instructions given the jury by the trial court, I cannot fairly conclude that the verdict was not supported by " ' "any fair interpretation of the evidence" ' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995], quoting *Moffatt v Moffatt*, 86 AD2d 864, 864 [1982], *affd* 62 NY2d 875 [1984]).

Cardona, P.J. (dissenting). I respectfully dissent.

A jury verdict will not be set aside unless the evidence so preponderates in the movant's favor that a jury's contrary verdict could not be reached upon a fair interpretation of the evidence (*see Pyptiuk v Kramer*, 295 AD2d 768, 769-770 [2002]). Applying that standard, I conclude that Supreme Court did not abuse its discretion in granting plaintiff's motion to set aside

the verdict. While the majority correctly notes that defendant herein is entitled to all favorable inferences from the facts adduced at trial (*see id.*), such inferences must have sufficient support in the record (*see Lagueux v Hayes*, 241 AD2d 813, 814-815 [1997]; *Simpson v Simpson*, 222 AD2d 984, 986-987 [1995]). The existence of a factual issue does not preclude intervention by the trial court in appropriate circumstances (*see Wierzbicki v Kristel*, 192 AD2d 906, 907 [1993]; *see also Nordhauser v New York City Health & Hosps. Corp.*, 176 AD2d 787, 791 [1991]; *Nicastro v Park*, 113 AD2d 129, 135 [1985]). In other words, "[a] determination that a verdict is against the weight of the evidence does not require the total absence of factual issues" (*Nordhauser v New York City Health & Hosps. Corp., supra* at 791). In fact, it is the actual presence of a disputed factual issue that renders a new trial appropriate as opposed to the granting of a judgment notwithstanding the verdict (*see Nicastro v Park, supra* at 136).

Here, the jury reached only the first question on the verdict sheet, namely, "Did the non-party, John Humphrey, engage in negligent or intentionally harmful conduct toward [plaintiff] on October 15, 1996?" That question, therefore, defines the disputed factual issue herein for purposes of this motion and the question distills to whether the jury's answer in the negative to that question was against the weight of the evidence. In reviewing the proof presented by plaintiff to support an affirmative answer to that first question, I agree with Supreme Court that the evidence so preponderated in plaintiff's favor that the jury's contrary verdict could not have been reached upon a fair interpretation of the evidence (*see Pyptiuk v Kramer, supra*).

Initially, I find that the certified copy of Humphrey's certificate of conviction for sexual abuse in the first degree for his actions that day was properly admitted into evidence and considered by Supreme Court in setting aside the verdict. A review of the trial minutes discloses that plaintiff's counsel pointed out the propriety of the certification attached to the typed, official form and Supreme Court thereafter admitted the certificate of conviction (*see* CPLR 4540 [authentication of official records for purposes of admission]; *see also* CPLR 4520 [certificate of public officer]). Defendant did not challenge the *authenticity* or foundation of the record in any respect but, instead, argued that it was hearsay and inadmissible as a party admission. Significantly, the certificate contains no testimony,

statements or "declarations against interest" by Humphrey.[1] It is merely an official form filled out by a public officer establishing that the guilty plea was entered and a certain sentence was imposed. Notably, the criminal complaint brought by plaintiff was part of her case at trial and, therefore, its resolution, as documented by the certificate, is clearly part of the narrative. Furthermore, it is important to note that defendant took the position at trial that Humphrey never harmed plaintiff. Therefore, it is my opinion that plaintiff's case could not be fairly tried without reference to the conviction, especially in light of the defense strategy employed (*cf. Sims v Union News Co.*, 284 App Div 335, 340 [1954]).

In sum, Humphrey's certificate of conviction was properly admitted into evidence, regardless of Humphrey's availability to testify. Although it was not binding on defendant as an admission of negligence, a trier of fact could infer from its entry that Humphrey engaged in some form of inappropriate sexual conduct during the incident in question (*see generally Miszko v Luma*, 284 AD2d 641 [2001]; *Brereton v McEvoy*, 44 AD2d 594, 596 [1974]). That is true regardless of the fact that it was an *Alford* plea (*see Merchants Mut. Ins. Co. v Arzillo*, 98 AD2d 495, 506 [1984]), since such a plea is permitted only when "it is the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt" (*Matter of Silmon v Travis*, 95 NY2d 470, 475 [2000]).

Furthermore, I cannot agree with the conclusion that plaintiff's own version of events was "directly contradicted" by the testimony of Randy Fitch, defendant's employee. Such a conclusion would be feasible if Fitch had testified that he watched the entire interaction between Humphrey and plaintiff from the time Humphrey pulled the bus over until the time he began driving away. Instead, Fitch testified that Humphrey's bus was already stopped when he arrived and Fitch was initially occupied attempting to maneuver his bus around Humphrey's vehicle. Fitch clearly stated that he only idled at that

---

1. In that regard, I note that one case cited by the majority, the First Department case of *2641 Concourse Co. v City Univ. of N.Y.* (147 AD2d 379 [1989], *affg on op below* 135 Misc 2d 464 [1987]), could be construed as support for the proposition that a nonparty's certificate of conviction, as opposed to plea minutes, out-of-court statements or prior testimonies (*see* CPLR 4517), is inadmissible as a declaration against interest. However, that case does not mention whether the "Judgment and Probation/Commitment Order" contains actual statements from the defendant or whether it was certified. Furthermore, it is worth noting that the court specifically focused its inquiry upon the admissibility of the *plea allocution* as a declaration against penal interest. Here, Humphrey's plea allocution was not admitted into evidence.

location "[p]robably less than a minute, thirty seconds" before he beeped his horn and Humphrey's bus pulled away. Fitch conceded on cross-examination that he had no knowledge as to whether a crime had been committed on the bus and could only testify that he saw no physical contact between plaintiff and Humphrey at the time that he was looking into the other vehicle. Thus, the only fair conclusion to be drawn from his testimony, if credited in its entirety, is that no assault took place during the brief period that Fitch was looking into the bus's interior. While Fitch's testimony differed from plaintiff's as to where Humphrey was standing when Fitch sounded his horn, I do not believe that discrepancy was sufficient to justify an inference that Humphrey did not negligently or intentionally harm plaintiff on October 15, 1996.

Next, a fair interpretation of the evidence does not support defendant's unsubstantiated "theory" at trial that plaintiff and another woman, Arlene Sebast, "conspired" with each other to falsely accuse Humphrey. There is nothing improper about crime victims seeking support and consulting with each other about appropriate avenues of legal redress, whether they be civil or criminal. For a jury to reasonably adopt a conspiracy theory, there must be sufficient record proof permitting an inference that both women planned to *fabricate* charges. The difficulty with the conspiracy theory herein is the complete absence of proof that would support an inference that Sebast, who had been a waitress in a diner frequented by defendant's employees, lied when she reported that Humphrey touched her breasts in that diner without her permission in December 1995. To the contrary, not only did Sebast testify to the incident, it was established that her manager specifically complained to defendant about that occurrence and also another instance of unwanted physical contact perpetrated by Humphrey on a different diner waitress. Ultimately, Humphrey pleaded guilty to two counts of sexual abuse in the third degree in connection with these complaints.

Further, the trial evidence established that Sebast attempted to contact plaintiff to offer her support after one of defendant's employees told her about a July 5, 1996 incident wherein plaintiff alleged that Humphrey subjected her to unwelcome physical contact as she exited his bus and then followed her into her workplace. Sebast testified that she remembered speaking about the incident with Carl Feathers, an employee of *defendant*. In his testimony, Feathers recalled that plaintiff told him about the July 1996 incident a few days after it oc-

curred and he urged her to file a complaint with defendant.[2] Sebast further testified that she and plaintiff consulted an attorney and, after the October 15, 1996 allegation, she accompanied plaintiff to the police station to make a complaint. I do not find that the above proof reasonably supports a conspiracy theory (cf. Simpson v Simpson, 222 AD2d 984, 986 [1995], supra). In that regard, since it is clear from the unchallenged testimony of Feathers that plaintiff complained of improper behavior by Humphrey as early as July 1996, a conspiracy theory is not supported by the fact that plaintiff may have contacted an attorney prior to the October 15, 1996 incident.

Turning to the issue relating to the fact that plaintiff did not immediately disclose her allegation that Humphrey forced her to sodomize him, I note that she did present the jury with a reasonable explanation for her reticence. The testimony is undisputed that immediately after Humphrey stopped the bus and plaintiff emerged, she went over to a nearby bus operated by Feathers. According to Feathers, plaintiff was hysterical and told him that Humphrey had exposed himself and importuned her for oral sex. Plaintiff testified that she did not immediately report the sodomy because she was too embarrassed. In any event, even if the jury believed that plaintiff embellished her allegations at a later time, the undisputed evidence establishes that plaintiff immediately informed defendant's employees and others of intentionally harmful conduct by Humphrey consistent with the first question on the verdict sheet.

In my view, Supreme Court's grant of plaintiff's motion did not constitute unnecessary interference " 'with the fact-finding function of the jury to a degree that amounts to an usurpation of the jury's duty' " (Wierzbicki v Kristel, 192 AD2d 906, 907 [1993], supra, quoting Ellis v Hoelzel, 57 AD2d 968, 969 [1977]). Simply, considering this entire record, including the certificate of conviction, Supreme Court was correct in determining that the only fair answer to the first question on the verdict sheet was in the affirmative. While there is no dispute as to the deference that should be accorded a jury verdict, it is also important to recognize that a trial court's conclusion that a jury verdict is not a fair reflection of the evidence is entitled to great respect, especially since it is in the "best position to

---

2. Notably, Feathers testified that plaintiff told him she had faxed a complaint to defendant concerning the July 1996 incident. Thus, regardless of whether defendant's management personnel actually received the fax, Feathers' testimony certainly helps explain why plaintiff might have consulted an attorney before the October 1996 incident and undercuts the apparent implication that she made up the incident after the fact to frame defendant.

properly assess the evidence presented at trial" (*Nicastro v Park*, 113 AD2d 129, 137 [1985], *supra*). Accordingly, I would affirm.

Ordered that the order is reversed, on the law, with costs, motion denied and verdict reinstated.